VERINA S. M. CHAPMAN, Appellant, *v.* PHŒNIX NATIONAL BANK OF THE CITY OF NEW YORK.

Proceedings under the confiscation acts of Congress of 1861 and 1862 were not simply *in rem*, but the right to condemn property under them depended upon the *delictum* of the owner, whom it was necessary to bring into court in some manner so that he could have a hearing.

Plaintiff was the owner of eighty-four shares of defendant's stock, the certificate whereof was issued to her in 1859, in her then maiden name, " Miss Verina S. Moore," which certificate she still holds. She then resided in Newberne, N. C. She received the dividends on said stock up to January 1, 1861, when she married Mr. Chapman. Up to December, 1865, she resided with her husband in Ashville, N. C., and in Talladega county, Ala., taking no part in the rebellion. In February, 1864, the U. S. marshal, under directions of the U. S. district attorney,

addressed a letter to defendant notifying it that he seized eighty-four shares of its stock and the dividends thereon belonging to "Ver. S. Moore, now or late of Newberne, N. C." A libel of information was then filed in the U. S. District Court describing the stock as in said letter, without giving the number of the certificate, and alleging that the property so seized belonged to "Ver. S. Moore, a rebel," without stating any residence, who, it was alleged, since the passage of the confiscation act of 1862, had acted as an officer of the rebel army, as a member of the congress and as a judge, commissioner and agent of the Confederate States. The information was not verified. Such proceedings were had thereon that a judgment was entered by default, condemning the property which was described as belonging to "Ver. S. Moore," directing the bank to cancel the certificate issued to that person, the number of plaintiff's certificate being then for the first time given; to issue a new certificate and to pay the dividends to the clerk of the court, and directing the issuing of a writ of *venditioni exponas.* Defendant obeyed the directions in the decree. Plaintiff had no notice of the pendency of these proceedings. In an action to recover dividends, *held,* that plaintiff's title to the stock was not affected by the confiscation proceedings; and that they constituted no defense.

Plaintiff presented a petition in the U. S. District Court praying that the decree of confiscation and all proceedings under it be set aside and vacated; this was denied. *Held,* that this did not validate the decree or prevent her from asserting her claim.

*Chapman* v. *Phœnix Nat. Bk.* (12 J. & S. 340), reversed.

(Argued May 12, 1881; decided May 31, 1881.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made November 4, 1878, which affirmed a judgment in favor of defendant, entered upon a decision of the court on trial without a jury. (Reported below, 12 J. & S. 340.)

The nature of the action and the material facts are stated in the opinion.

*Cephas Brainerd* for appellant. By the law of nations, the only lawful judicial proceeding for the confiscation of the property of enemies was, upon its capture upon the high seas. (*U. S.* v. *Stephenson,* 3 Ben. 119; *U. S.* v. *1756 Shares of Cap. Stock,* 5 Blatchf. 231; *Conrad* v. *Waples,* 96 U. S. 284.) Congress had power to enact laws for such a purpose. (*Miller* v. *U. S.,* 11 Wall. 268.) The title of the United States is transferred to it by the act of the offender. (*U. S.* v. *Steven-*

son, 3 Ben. 119; *U. S.* v. *Bark Reindeer*, 2 Cliff. 57; *U. S.* v. 56 *Barrels of Whisky*, 1 Abb. C. C. 93; *U. S.* v. *Grundy*, 3 Cranch, 338; *Henderson's Distilled Spirits*, 14 Wall. 57.) The manual seizure of the property was necessary for the retaining of it in the custody of the court, and the absence of such seizure, as one of the preliminary proceedings for such condemnation and sale, would be fatal. (*Miller* v. *U. S.*, 11 Wall. 268.) This seizure, though not a part of the record, must be proved as an essential element of jurisdiction. (*Pike* v. *Wassell*, 94 U. S. 711.) In such a proceeding every thing must be correctly done, otherwise the entire proceeding is fruitless. (*Windsor* v. *McVeigh*, 93 U. S. 274.) Congress conferred simply the power of condemning the property, which had become forfeited for the offenses mentioned in the acts. (*U. S.* v. *1756 Shares of Capital Stock*, 5 Blatchf. 231; *Conrad* v. *Waples*, 96 U. S. 279.) Want of jurisdiction, either of the subject-matter, or of the person of either party, rendered the judgment a mere nullity, and proof on the subject of jurisdiction was admissible. (*Buchanan* v. *Rucker*, 1 Camp. 67; Story on Conflicts, § 549, notes [7th ed.]; *Gray* v. *Larremore*, 2 Abb. C. C. 542; Freeman on Judgments, § 117; *Campbell* v. *McCahan*, 41 Ill. 45; McNamara on Nullities, 77 [Law Lib., vol. 87, p. 77]; *Mayor, etc.*, v. *Porter*, 18 Md. 285; *Windsor* v. *McVeigh*, 93 U. S. 274; *Bloom* v. *Burdict*, 1 Hill, 130; *Ferguson* v. *Crawford*, 70 N. Y. 253.) The actual presence of the property within the limits of the court's process is not conclusive upon the subject of jurisdiction. (Freeman on Judgments, 509, 511, §§ 611, 612; *Rose* v. *Himely*, 4 Cranch, 241, 268, 269; *Buchanan* v. *Rucker*, 1 Camp. 67; *Bosswell* v. *Dickerson*, 4 McLean, 262; *The Acorn*, 2 Abb. C. C. 445; *Allen* v. *U. S.*, Taney's Decisions, 112.) A party is not bound to appeal from a void judgment, and, whether appealable or not, a judgment can always be attacked for want of jurisdiction. (Freeman on Judgments, § 117; *Mayor* v. *Porter*, 18 Md. 285; *Williamson* y. *Berry*, 8 How. [U. S.] 543; *Atty.-Gen.* v. *Hotham*, Turner & Russell, 219.) The proceedings were

void because there was no evidence to sustain them. (*Roderigas* v. *East River Sav. Inst.*, 63 N. Y. 460, 463, 472; 76 id. 319, 321.) The plaintiff could not be barred without her day in court. (*Dean* v. *Nelson*, 10 Wall. 172; *Lasere* v. *Rochereau*, 17 id. 437.) Even if the court had jurisdiction, and had attempted to assert it, the notices given before the filing of the libel are not such a seizure as could be construed into a manucaption of the property by the marshal. (*Pelham* v. *Rose*, 9 Wall. 107; *Miller* v. *U. S.*, 11 id. 325; *Holbrook* v. *N. J. Zinc Co.*, 57 N. Y. 616.) The issue of the certificate of stock to Blossom was ineffectual to deprive the plaintiff of her stock, or affect it in any way. (*Mechanics' Bk.* v. *N. Y. & H. R. R. Co.*, 13 N. Y. 617.) It being the recognized law in this State that stock cannot be transferred in the manner claimed by defendant if there be any conflict between the State and Federal courts on the subject, those of the State must control. (*Poole* v. *Kermit*, 37 N. Y. Supr. 115; *Town of Venice* v. *Breed*, 1 id. 131.) The decree, even if jurisdiction were established, would be void for fraud or mistake. (*Kerr* v. *Kerr*, 41 N. Y. 272; *The Acorn*, 2 Abb. C. C. 445.) A void judgment will not justify its recognition of a trespasser or a stranger as the owner of the plaintiff's stock. (*Hollingsworth* v. *Bagley*, 35 Tex. 345; Freeman on Judgments, § 117.) The decision of a motion is never regarded as *res adjudicata*, except simply as against making the same motion again upon the same facts, and even then it is discretionary with the court whether to entertain it or not, but for any other purpose it has no binding force or effect whatever. (*Van Rensselaer* v. *Sheriff of Albany*, 1 Cow. 501; *Dulfers* v. *Frosch*, 5 Hill, 493; *Banks* v. *Am. Tract Soc.*, 4 Sandf. Ch. 438; *Snyder* v. *White*, 6 How. 321; *Mack* v. *Patchin*, 29 id. 29; *Hacket* v. *Connell*, 2 Edw. 75; *Arden* v. *Patterson*, 5 Johns. Ch. 45, 52.) Even if a judgment, it is not *res adjudicata* unless the merits are inquired into. (*Coit* v. *Beard*, 33 Barb. 357; *Dexter* v. *Clark*, 35 id. 271; *People* v. *Vilas*, 36 N. Y. 459.) A motion to open a default is discretionary and the order not appealable. (*Fort* v. *Bird*, 1 N. Y. 43; *Packard* v. *Wood*, 17

Abb. 319, note.) No right to forfeit enemies' property taken on land, and within our territory, is recognized as existing under this government, except there be an act of Congress authorizing such forfeiture; such right is then limited, by the express term, of the law which creates it. (*Brown* v. *U. S.*, 8 Cranch, 110; 3 Con. 56.) If Congress had not passed the two confiscation acts, the property of all citizens of the rebel States would have been just as safe in the loyal States, from the beginning to the end of the rebellion, as if that rebellion had never occurred. (*The Providence*, Pratt on Contraband, 76, 83, 85; *The Dickinson*, Hay & Marriott, 1, 45, 46.) The statutes of 1861 and 1862 guaranteed entire immunity, so far as the confiscation of property within the Union lines was concerned, to every resident of the rebel States who refrained from the prohibited use of his property, and from the prohibited acts. (*Corbett* v. *Nutt*, 10 Wall. 464, 479; *Tyler* v. *Defrees*, 11 id. 331; *Day* v. *Micou*, 18 id. 156, 161; *Conrad* v. *Waples*, 96 U. S. 279; *Windsor* v. *McVeigh*, id. 274.) The confiscation proceedings must have been in prize. (Benedict's Admiralty, § 306; Betts' Pr. 5, 8, 16, 71; *The Anna*, Blatch. Prize Cas. 337, 339; *Le Theodore*, Edwards, 258; *The Gertruyde*, 2 Ch. Rob. 211, 220; *The Dickinson*, Hay & Marriot, 1; *The Rebecca*, id. 197; *Brown* v. *U. S.*, 8 Cranch, 110; Twiss' Law of Nat., Part 2, p. 137; *Lindo* v. *Rodney*, 2 Doug. 613, 615.) Conformity to the established rules is essential to the validity of a sentence of condemnation in prize. (2 Phillimore's Int. Law [2d ed.], 715, 716; *Windsor* v. *McVeigh*, 93 U. S. 274; *Ship Alliance*, Blatch. Prize Cas. 646; *The Betsey*, Wheaton's Life of Pinkney, 209.) There was not such a substantial conformity in the case at bar to the established rules. (*Holbrook* v. *N. J. Zinc Co.*, 57 N. Y. 616; *Mechanics' Bk.* v. *N. H.-R. R.*, 13 id. 617; *Hardy* v. *Moore*, Fed. Rep. 843; *Conrad* v. *Waples*, 96 U. S. 279.) There must be an actual seizure of the property; it must in fact be within the custody and control of the court. (Upton on Prizes [2d ed.], 201–202, §§ 5, 6 of Confiscation Act of 1861, and § 7 of Act of 1862; *Pelham* v. *Way*, 15 Wall.

196 ; *U. S.* v. 1,756 *Shares,* 5 Blatchf. 231, 237 ; *Pelham* v. *Rose,* 9 Wall. 103.)

*Flamen B. Candler* for respondent. The seizure, and the confiscation and condemnation, by the United States District Court, of the stock and of the accrued dividends thereon, mentioned in the proceedings and the decree set forth, are a defense to this action. The District Court had jurisdiction to make the decree of condemnation. (*U. S.* v. *Arredondo,* 6 Peters, 709 ; *Daniels* v. *Tearney,* 23 Alb. L. J. 68 ; Vol. 12 of Statutes at Large, 319, 589 ; *Hunt* v. *Hunt,* 72 N. Y. 229 ; *The Confiscation Cases,* 20 Wall. 92, 108 ; *Ruckman* v. *Cowell,* 1 N. Y. 505, 507 ; *McCormick* v. *Sullivant,* 10 Wheat. 192 ; *Miller* v. *U. S.,* 11 Wall. 269, 331.) Jurisdiction was not lost by reason of the absence of the party charged with the offense. (1 Greenl. on Ev., §§ 525, 543 [Redf. ed.] ; *Miller* v. *U. S.,* 11 Wall. 269, 331 ; *Confiscation Cases, Slidell's Land,* 20 id. 93, 114, 115.) It cannot be argued that because of the innocence of the party charged with the treasonable offense, the United States District Court had no jurisdiction. (*Roderigas* v. *E. R. Sav. Inst.,* 63 N. Y. 260 ; *Hunt* v. *Hunt,* 72 id. 230 ; *U. S.* v. *Arredondo,* 6 Peters, 709 ; *Krekeler* v. *Ritter,* 62 N. Y. 372 ; *Harvey* v. *Tyler,* 2 Wall. 342 ; *Kelsey* v. *Beers,* 16 Abb. Pr. 228 ; *Voorhees* v. *Bk. of U. S.,* 10 Peters, 440 ; Rules 3 and 5 of U. S., 1864.) The decree of condemnation by the United States District Court was a judgment *in rem,* which judgment of itself divested the plaintiff of her title to the stock and the dividends thereon, and vested the title in the United States. (*U. S.* v. *Grundy,* 3 Cranch, 337, 350 ; *U. S.* v. *Bags of Coffee,* 8 id. 405 ; *Gelston* v. *Hoyt,* 3 Wheat. 246, 312, 313 ; *Williams* v. *Armroyd,* 7 Cranch, 423 ; *Burbank* v. *Conrad,* 96 U. S. 293, 299.) Decrees of a court of competent jurisdiction on the point in issue before it can only be reviewed by appeal, except in cases of fraud, and while unreversed are conclusive upon all other courts. (*Bigelow* v. *Winsor,* 1 Gray, 299 ; *Burhans* v. *Van Zandt,* 7 N. Y. 523 ; *Cooke* v. *Halsey,* 16 Peters, 71 ; *Stilwell* v. *Carpen-*

*ter,* 59 N. Y. 414; *Smith* v. *Nelson,* 62 id. 286; 1 Abb. Nat. Dig. 120, § 139, notes *b* and *c; In re Tobias Watkins,* 3 Peters, 207.) Judgment by default is a bar where no proof is offered. (*Ogsbury* v. *La Farge,* 2 N. Y. 113; *Binck* v. *Wood,* 43 Barb. 315.) Judgment of a court of the United States, the subject-matter of which is within its jurisdiction, cannot be impeached by a State court. (*Kelsey* v. *Beers,* 16 Abb. Pr. 228; *Kemp's Lessee* v. *Kennedy,* 5 Cranch, 185; *Ex parte Tobias Watkins,* 3 Pet. 193; *Chumung Canal Bk.* v. *Judson,* 8 N. Y. 254; *Elliot* v. *Piersol et al.,* 1 Pet. 328, 340; *Ruckman* v. *Powell,* 1 N. Y. 507; 7 Watson on Sheriffs, 53, 54, 55, Law Library; 3 Harrison's Dig. 63, 73-15; 2 Cranch, 168; 6 id. 267; 10 Peters, 449; 3 Ohio, 306; 2 Metc. 408; 3 id. 460; 6 How. [U. S.] 31.) This is true as well in the case of a judgment *in rem.* (*Gelston* v. *Hoyt,* 3 Wheat. 246; *Williams* v. *Armroyd,* 7 Cranch, 423; *Hudson* v. *Guestier,* 6 id. 281; 1 Greenleaf on Evidence, §§ 525, 543 [Redf. ed.].) The judgment of the United States District Court was properly pleaded in this action. (Code Procedure, § 161; 4 Abb. Dig., title Pleading under Code, 1586; *Bement* v. *Wisner,* 1 Code R. [N. S.] 143; *Langdon* v. *Astor,* 3 Duer, 477.) The plaintiff's proceedings in the United States District Court, seeking to have the decree of condemnation and confiscation set aside, and the order of the court thereon constitute a *res adjudicata* in the matters of this suit. (Code of Procedure, § 161; *Livingston's Petition,* 34 N. Y. 570, 575, 581; *S. C.,* 32 How. Pr. 20; *Dwight* v. *St. John,* 25 N. Y. 203; *Cochran* v. *Van Surlay,* 20 Wend. 365.) A party can only be heard in the regular way, he can be heard on writ of error, although this decree was in default *in rem.* (*Miller* v. *United States,* 11 Wall. 269; *Young* v. *United States,* 97 U. S. 261; *United States* v. *Arredondo,* 6 Peters, 709; *Mc Veigh* v. *The United States,* 11 Wall. 259.) The defendant has shown jurisdiction in the District Court so far as is necessary. (*Ruckman* v. *Cowell,* 1 N. Y. 505, 507; *Miller* v. *United States,* 11 Wall. 299, 300; *Kempe's Lessee* v. *Kennedy,* 5 Cranch, 185; *Ex parte Tobias Watkins,* 3 Pet. 193; *Chemung Canal Bank* v *Judson,* 8 N. Y. 254; *Elliott* v. *Peirsol et al.,* 1 Pet. 328, 340;

Watson on Sheriffs, 53, 54, 55, Law Library; 3 Harrison's Dig. 63, 73–5; *Ruckman* v. *Cowell*, 1 Comst. 505; *Woodcock* v. *Bennett*, 1 Cow. 711; *Shaw* v. *Davis*, 55 Barb. 389; *Union Ins. Co.* v. *U. S.*, 6 Wall. 759; *U. S.* v. *Armstrong Foundry*, id. 756.) There can be no doubt that the proceedings in the United States District Court were *in rem*, and not *in personam*. (*Miller* v. *U. S.*, 11 Wall. 303; *Bank of the U. S.* v. *Moss et al.*, 6 How. [U. S.] 31; *Bliven* v. *Hudson R. R. R. Co.*, 35 Barb. 188; *Van Winkle* v. *U. S. Mail St. Co.*, 37 Barb. 122; *Bates* v. *Stanton*, 1 Duer, 79, 87; *Beach* v. *Berdell*, 2 id. 327; *Scranton* v. *The F. & M. Bk. of R.*, 24 N. Y. 426; *Barnard* v. *Kobbe*, 3 Daly, 35; *Burton* v. *Wilkinson*, 18 Vt. 186; *Rogers* v. *Wier*, 34 N. Y. 463; *Roderigas* v. *The E. R. Sav. Inst.*, 63 id. 460; 1 Pars. on Cont. 675, 677; *Gelston* v. *Hoyt*, 3 Wheat. 246; *Williams* v. *Armroyd*, 7 Cranch, 423; *Hudson* v. *Guestier*, 6 id.; *McVeigh* v. *U. S.*, 11 Wall. 259; *U. S.* v. *Shares of Capital Stock*, 5 Blatchf. 231; *Cooke* v. *Halsey*, 16 Pet. 71; 1 Abb. Nat. Dig. 122, § 139; 1 Greenl. on Evi. 523; Smith's Leading Cases; *Duchess of Kingston's Case*, 20 Howell's State Trials, 538; *Voorhees* v. *Bk. of U. S.*, 10 Pet. 440; *The Protector*, 12 Wall. 700.)

EARL, J. This action was commenced in March, 1870, to recover the amount of certain dividends declared between January 1, 1861, and February 1, 1870, by the defendant and its predecessor, upon eighty-four shares of stock claimed to belong to the plaintiff. The defense was that, in 1864, by proceedings then taken in the United States District Court, for the southern district of this State, the stock and the dividends declared before that time were confiscated under two acts of Congress; the one approved August 6, 1861, and the other approved July 17, 1862.

The facts, so far as material to a proper understanding of the case, are as follows:

The plaintiff's maiden name was Verina S. Moore. She is a native of Ireland, and commenced teaching school in Newberne, North Carolina, in 1845, and, with her earnings as a

school-teacher, in 1854, she purchased one hundred and fifty shares of the capital stock of the Phœnix Bank. She held such shares, receiving semi-annual dividends thereon, until about the 1st day of January, 1859, when she sold all of the shares but eighty-four. She then took a new certificate for the eighty-four shares, in her name, as "Miss Verina S. Moore," which has ever since been in her possession. Thereafter she received semi-annual dividends upon the eighty-four shares of stock until January 1, 1861. In that month she was married to Rev. Dr. Chapman, a Presbyterian minister; and from the time of her marriage to December, 1865, she resided with her husband in Asheville, North Carolina, and in Talladega county, Alabama, discharging the duties pertaining to her station as the wife of a minister and a planter, and taking no part in, and giving no aid or comfort to, the rebellion except, in the language of her evidence, that, "in common with all the better class of my sex in our southern homes, I sympathized thoroughly with our own section of country, and endeavored throughout those four calamitous years to alleviate suffering among our soldiers, and others of the needy, wherever and whenever I met with them."

On the 23d day of February, 1864, the United States district attorney addressed a letter to the United States marshal instructing him to seize eighty-four shares of the stock of the Phœnix Bank, together with the dividends due and unpaid thereon, belonging to Ver. S. Moore describing such person as "now or late of Newberne, North Carolina." In pursuance of this instruction, on the next day, the marshal addressed a letter to the "president, cashier and directors" of the bank in which he declared that he seized the eighty-four shares and the dividends thereon belonging to one "Ver. S. Moore now or late of Newberne, North Carolina."

On the 10th day of March, 1864, the United States district attorney filed a libel of information in the United States District Court on behalf of the United States, and the informer, Charles F. Allen, against "eighty-four shares of said capital stock of said Phœnix Bank, together with $336.20, dividends due and unpaid thereon, belonging to Ver. S. Moore." It is al-

leged in the information that the property so seized belonged to Ver. S. Moore, a rebel, and that it had been bought and taken and was held and used for the purpose of aiding, abetting and promoting insurrection and rebellion, contrary to the provisions of the act of Congress of 1861, above referred to. It is further therein alleged, that since the passage of the act of Congress approved July 17, 1862, Ver. S. Moore, the alleged owner of the property, had acted as an officer of the rebel army and navy, as a member of the Congress and as a judge, commissioner and agent of the Confederate States, and as a member of a convention and judge of some one of the Confederate States. The information contained other allegations pertinent and material under the acts of Congress referred to, and prayed judgment that the property might be confiscated to the United States, and that the bank and its officers be required, upon the presentation of a copy of the judgment, to pay the sum of $336.20; the unpaid dividends, to the clerk of the court, and that the certificate of the stock be canceled on the books of the bank and that a new certificate be issued by the bank to the clerk. It contained a final prayer for the usual process and monition against the property, and that all persons interested therein might be cited to answer the premises.

The information did not give the number of the certificate of stock, or describe it in any way, and it did not allege where Ver. S. Moore resided or give any description of such person except as above substantially stated.

In pursuance of the prayer of the information, on the same day, the court issued a monition to the marshal directing him to seize the above-described property of Ver. S. Moore, and detain the same in his custody until the further order of the court, and to give due notice to all persons claiming the same or knowing or having any thing to say why the same should not be condemned and sold, pursuant to the prayer of the information, that they be and appear before the court on the 29th day of March, then instant, then and there to interpose a claim for the same and to make their allegations in that behalf.

On the 29th of March the marshal made return to the

monition that he had attached the property therein 'described and had given due notice to all persons claiming the same, that the court would on the 29th day of March proceed to the trial and condemnation thereof, should no claim be interposed for the same.

No one appearing to be heard in reference to the property, on the next day, March 30, a judgment was entered by default, condemning the property described as belonging to Ver. S. Moore, as forfeited to the United States, directing the bank to cancel the certificate issued to Ver. S. Moore, which was then outstanding and the number of which was here, for the first time, given, and to issue a new certificate to the clerk of the court and also to pay the dividends then due to the clerk, and directing a writ of *venditioni exponas* to issue to the marshal returnable April 19th, and that upon return thereof the clerk pay the proper fees of the officers and then distribute the balance of the proceeds in equal parts to the United States and the informer.

On the 31st day of March the new stock certificate was issued by the bank to the clerk and the writ of *venditioni exponas* was issued, and it was subsequently executed by the marshal by a sale of the stock, and the proceeds were disposed of as directed.

During the pendency of these proceedings, the plaintiff was in the State of North Carolina, wholly ignorant of them, and she had no notice that any proceedings had been taken against her stock until the following year.

It is now claimed that the plaintiff has, by these proceedings, lost the title to her stock and the dividends, and that the judgment of the United States District Court confiscating the property is absolutely conclusive upon her. We are of a contrary opinion.

The information was not verified and no witness was sworn to establish any fact alleged therein. It does not appear what the notice given by the marshal was. It was doubtless such as the rules of the court required. What they were we do not know. The notice probably was simply a proclamation in open court, or a brief publication in some newspaper. The plaintiff was

within the Confederate lines and could not by any possibility receive the notice, and if she had received it, she could not have crossed the lines to respond thereto. In twenty days after the information was filed her property was condemned, although both she and it were innocent of any offense against the laws. It has thus turned out, if the proceedings are conclusive upon her, that she has been deprived of her property without any just cause, upon allegations established by no oath and without any hearing or opportunity to be heard. Before we can uphold such a proceeding so penal in its nature, bearing so faint a resemblance to an orderly, fair, just, judicial hearing and determination, we must be satisfied that the laws have been strictly complied with.

The act of 1861 provides that if, during the then pending rebellion, any person should purchase or acquire, sell or give any property with intent to use or employ the same, or suffer the same to be used or employed, in aiding, abetting or promoting insurrection or resistance to the laws; or if any person or persons being the owner or owners of any such property should knowingly use or employ, or consent to the use or employment of the same, as aforesaid, all such property is declared to be lawful subject of prize and capture wherever found, and that it should be the duty of the president of the United States to cause the same to be seized, confiscated and condemned. There is nothing in that act authorizing the condemnation of the property of rebels generally, but only of such property as should knowingly and intentionally be used or devoted by the owner to aid, abet or promote rebellion, or to maintain the war then pending against the Government. In proceedings under that act, therefore, it was not sufficient to show that the property seized had been used or was intended to be used to aid the rebellion, but it was needful further to show that the owner or his agent knowingly and intentionally consented to such use; and it was necessary, therefore, in some way to establish the guilt of the owner, and hence such owner was entitled to be brought into court in some mode that he could have a hearing.

The a.t of 1862 did not authorize the confiscation of the property of every person residing within the rebellious States, but only the property of such persons as should thereafter be guilty of the acts of disloyalty and treason mentioned in the act. Therefore, before the property of any person could be condemned under that act, it was needful to establish in some way his guilt of the forbidden acts and hence it was necessary that he should in some way be brought into court that he could be heard in his defense.

The fatal defect to the proceedings now under consideration is that the owner of the property was in no way brought into court. The proceeding was against one Ver. S. Moore, who is alleged to be the guilty owner. Who was Ver. S. Moore? If "Ver." is to be held not to be a name but an abbreviation of some name, of what name? Is it the abbreviation of the name of a man or of a woman? It might be the abbreviation of Verplank, Vergil, Verrius, Verginius or of other names which could be mentioned. The inference, from all that appears in the information, is that Ver. S. Moore was a man, as the person is described as having committed disloyal and treasonable acts by holding various offices which are exclusively filled by men. Then again, at the time this information was filed, the name of the plaintiff was not even Verina S. Moore. Her name was then, and for more than three years had been, Verina S. Chapman. For several centuries, by the common law among all English speaking people, a woman, upon her marriage, takes her husband's surname. That becomes her legal name, and she ceases to be known by her maiden name. By that name she must sue and be sued, make and take grants and execute all legal documents. Her maiden surname is absolutely lost, and she ceases to be known thereby. Therefore, if some friend of the plaintiff, residing in the loyal States, had seen or heard the notice given by the marshal, and had been willing to befriend her by interference on her behalf, he would not have known that she was the person proceeded against. Still further, the stock was not, in the information, so described as to indicate that it was her eighty-four shares. Neither the

date nor number of the certificate of stock was given. There was nothing to distinguish it from any eighty-four shares of the stock of the bank, except as it was alleged to belong to Ver. S. Moore. It is said in Bacon's Abridgment (Misnomer, D), that "since names are the only marks and *indicia* which the human kind can understand each other by, if the name be omitted or mistaken there is a complaint against nobody." In *Greenslade* v. *Rotheroe* (5 B. & P. 132), Lord Mansfield said that "as the defendant had not been served with the writ by his right name, he could not be deemed, in law, to have been served at all." In *Cole* v. *Hindson* (6 T. R. 234), it was held that a plea of justification by an officer to trespass, for taking the goods of Aquilo Cole, that he took them under a *distringas* against Richard Cole (meaning Aquilo Cole), to compel an appearance, with an averment that Aquilo Cole and Richard Cole were the same person, could not be supported, unless Aquilo Cole appeared in that action and did not plead the misnomer in abatement. But in common-law actions, where a defendant has been actually served with process, and thus identified and brought into court, he must take advantage of a misnomer, either by motion or plea in abatement. But if he has not been served, and has no notice of the proceeding against him, and he is in no way properly described in the process or pleading, so as to be identified, then the proceeding must be an absolute nullity. Suppose a suit be commenced by publication against Richard Roe, a non-resident, the complaint describing him as the debtor, and an attachment be issued and levied upon the property of John Doe, who had no notice whatever of the suit; can it be successfully contended that a judgment in such action could have any force or validity whatever against John Doe? He is not in such case confined to such relief as he can get in the action. He has not been brought into court in any way, and he may resist the execution of the judgment as absolutely ineffectual against him, or his property.

It matters not that the United States district attorney intended to proceed against the owner of the stock, and supposed that Ver. S. Moore was such owner. He was bound to know

who the owner was and what such owner had done in violation of the acts of Congress, and until he did have such knowledge he had no right whatever, in law or morals, to take the proceeding. In any view that can be, taken of the proceeding, it would seem to have been a fraud upon the learned court in which it was conducted. If the district attorney knew who the owner of the stock was, he should have brought that knowledge to the attention of the court; if he had done so it is right to suppose that it would have required some proof of the disloyal acts alleged, before it would have ordered a decree of condemnation against the property of a woman. If he did not know who the owner was he could not have had such knowledge as in any degree to justify the proceeding.

The conclusion we have reached has ample justification in authority. In *Windsor* v. *McVeigh* (93 U. S. 274), it was held that a sentence of a court against a party, without hearing him or giving him an opportunity to be heard, is not a judicial determination of his rights, and is not entitled to respect in any other tribunal; that the jurisdiction acquired by the seizure of property in a proceeding *in rem* for its condemnation for alleged forfeiture is not to pass upon the question of forfeiture absolutely, but to pass upon the question after opportunity has been offered to its owner and parties interested to appear and be heard upon the charges for which the forfeiture is claimed, and that to that end some notification of the proceedings, beyond that arising from the seizure, prescribing the time within which the appearance must be made, is essential.

In *Day* v. *Micou* (18 Wall. 156), it was held that in confiscation proceedings, under the act of 1862, the property and estate of persons not made parties to the proceedings remained unaffected by the decree of condemnation and the sale thereunder.

In *Conrad* v. *Waples* (96 U. S. 279), certain real estate was seized and confiscated, under the same act, in a proceeding against Charles M. Conrad as owner, and the decree of condemnation was held wholly invalid against his son, the real

owner    So in *Risley* v. *The Phenix Bank of N. Y.* (83 N. Y. 318), recently decided in this court, certain property was confiscated in a proceeding against the Bank of Georgetown, as owner, and it was held that the decree of condemnation was wholly invalid against the plaintiff, Risley, who was the owner at the time of the condemnation.

It will be observed that in all these cases the identical property intended to be confiscated was seized, and the name of the supposed owner was in each case inserted in the information, and yet the proceedings were held invalid. The doctrine of these cases is that the proceeding under these acts is not merely *in rem* against offending property, so as to bind all persons, but that the right to condemn property under the acts depends upon the *delictum* of the owner, who must be brought into court, that he may have a hearing.

In the confiscation proceedings against her, the plaintiff did not even have the benefit of the arbitrary rule, which condemns first and hears afterward — *castigatque, auditque.* In 1869 she presented a petition to the United States District Court, in which her property was condemned, praying that the decree of condemnation and all proceedings under the same might be set aside and vacated, and she be permitted to come in and defend, but the prayer of her petition was denied, obviously not upon the merits. It does not appear, however, upon what ground the denial was based; nor does it matter, as it could not render valid a decree of condemnation which was before wholly ineffectual.

Our conclusion may operate harshly upon the defendant. It may suffer wrong; but we cannot shut our eyes to the fact that it was a *quasi* trustee of this stock for the plaintiff, and that it ought, acting in good faith, to have interposed in her behalf in the United States District Court. Instead of doing so, it seems quite willingly to have surrendered her stock, without any effort to protect it against those who were unlawfully pursuing it.

The judgment should be reversed and new trial granted.

All concur, except FOLGER, Ch. J., absent.

Judgment reversed.