**Winfield DUNN et al., Appellants,**

**v.**

**Rosary T. PALERMO, Appellee.**

Supreme Court of Tennessee.

April 7, 1975.

R. A. Ashley, Jr., Atty. Gen., Robert H. Roberts, Advocate Gen., Nashville, for appellants.

Martha Craig Daughtrey, Jayne Ann Woods, Nashville, for appellee.

OPINION

HENRY, Justice.

This action presents the question of whether it is mandatory that a married woman assume the name of her husband.

I.

Rosary T. (Rose) Palermo is a Nashville lawyer. On 29 September 1973 she married Denty Cheatham, also a Nashville lawyer. She has continued to use and enjoy her maiden name, Palermo, professionally, socially and for all purposes.

Tennessee has a state-wide, compulsory Registration Law.[1] Subsequent to her marriage, she lodged with the Registrar a change of address form listing her name as Palermo. She was advised that she was required to register anew under the surname of her husband, or have her name purged from the registration records. The Registrar was prompted by Sec. 2–206, T. C.A. which reads in pertinent part as follows:

2–206. *Acts purging registration—Notice.*—The registration of a person shall be purged:

(a) * * *

(b) Ninety (90) days after he changes his name by marriage or otherwise; ·

Upon her refusal to so register, her name was purged from the registration list. Thus this action, wherein appellee seeks a declaratory judgment declaring that the defendants' interpretation of Sec. 2–206, is erroneous, or in the alternative that this statute be declared violative of the Due Process and Equal Protection Clauses of the Fourteenth Amendment, and of the Nineteenth Amendment to the Constitution of the United States.

The Chancellor held: (1) that under the common law a married woman had the right to assume her husband's surname but she acquired his name by repute and not by operation of law; (2) that Sec. 2–206 does not operate to change the name of a woman at marriage to that of her husband; and, (3) that the action of the Registrar in purging the plaintiff's name was error and based upon an erroneous interpretation of the law.

Defendants have appealed, and insist that the statute dictates that a woman automatically take her husband's name upon marriage and that this was a requirement of the common law.

The conclusions we reach necessarily involve a consideration of the statutory laws of the state, the common law and the relevance of custom, usage and tradition.

## II.

Tennessee has no statutory enactment providing *in haec verba* that a woman automatically assumes her husband's surname upon the event of marriage.

█ The statute under consideration, standing alone, does not mandate a change of name by marriage. It merely recognizes the prevalence of the virtually universal custom under which a woman normally adopts the surname of her husband. Moreover, it is equally susceptible of the construction that when either party to the civil contract of marriage elects to use the name of the other, the registration will be changed.

█ Sec. 59–708(d), T.C.A., relating to drivers' licenses, provides for notification of the Department of Safety "when the name of a licensee is changed by marriage" of the "former and new names." Again this statute merely takes cognizance of custom and does not mandate a change.

Change of name is authorized in adoption proceedings. (Sec. 36–101 et seq, T. C.A.)

The lackadaisical policy or relative insignificance of a change of name under Tennessee Law is best demonstrated by reference to Sec. 23–801, T.C.A., et seq, governing such changes. No standards, guidelines or criteria are established. All that is required is that a live person file a sworn application in the proper court of the county of his residence "giving his reasons for desiring the change." There is no requirement that the reasons be good and sufficient; just that they be given. We assume that a married woman not enamoured with

---

1. See Sec. 2–201, T.C.A.

the custom, could get her name changed by "giving his reasons."

Finally, in divorce cases, courts may restore the wife's maiden name.

We proceed next to a discussion of the common law.

### III.

A name is a word or phrase that constitutes the distinctive designation of a person or thing. *Webster's New Collegiate Dictionary* (8th ed. 1974).

A person's first name is generally known as his given, Christian or proper name and is awarded at, or soon after birth. His surname, patronymic or family name is that which is derived from the common name of his parents, or is borne by him in common with other members of his family.

The history of the use of names, in England, the country that has had the greatest influence upon the customs of the United States, and the source of our common law, is of interest and relevance.[2]

Until about the time of the Norman Conquest, during Eleventh Century England, there was no such thing as a surname or family name, and each person was identified only by his Christian or given name. This led to substantial confusion resulting from the paucity of given names.[3] The custom of using surnames developed slowly with only sporadic use of such names until the practice became prevalent about the beginning of the fourteenth century. A man was designated, in addition to his Christian name, in the great majority of cases, by the name of his estate, the place he was born, where he lived, or whence he had come, or by his calling as John the Smith, or William the Taylor, in time abridged to John Smith and William Taylor. Sometimes the occupation became the family name. A son would be distinguished from his father by calling him John's-son or William's-son. The Normans added "Fitz" to the father's Christian name to designate the son, as Fitzgerald or Fitzhugh. Among the Celts of Ireland and Scotland, where each clan bore a surname, "Mac" was added to distinguish the son and "O" to distinguish the grandson, resulting in MacDonald and O'Donnell. Men also adopted surnames based upon physical characteristics (Long, Short), colors (Brown, Black), or moral attributes (Wiley, Moody, Wise), or of birds, animals or plants (Martin, Fox, Rose). This is a brief synopsis of the interesting developments of surnames. By the fourth year of the reign of Edward IV (1465), statutes were adopted requiring the use of surnames.

Apparently, surnames were adopted and abandoned at will, and it was not unusual for one person to have several surnames in the course of a lifetime. No requirement or custom demanded that a woman adopt the surname of her husband, and early records showed that husband and wife often were known by different surnames.[4]

The family group did not necessarily use the same surnames, and men sometimes adopted the surnames of their wives.[5] Property sometimes entered into the picture, and it was not uncommon for children to adopt the mother's name where she owned the most property or had the largest estate.[6]

2. This history is a composite from the following authorities: 57 Am.Jur.2d, Names, Sec. 2 (1971); Arnold, Personal Names, 15 Yale L.J. 227 (1905); 32 Maryland L.Rev. 409 (1973); and Petition of Snook, 2 Pittsburg Reports 26 (1859).

3. Estimates range from 200 to 600, in general use.

4. 32 Maryland L.Rev. 413 (1973); p. Reany, the Origins of English Surnames 83 (1967).

5. Ibid.

6. Reany, 84, 85.

The common law tended to place more stress on the baptismal than the surname. Coke instructs us:

> And regularly it is requisite . . . that speciall heed bee taken to the name of baptism for that a man cannot have two names of baptism as he may have divers surnames.[7]

In Button v. Wrightman, Poph. 56 (1682), it was said:

> The law is not so precise in the case of surnames, but for the Christian name, this ought always to be perfect.[8]

Up to this juncture we have been primarily concerned with historical developments. We now turn to legal authorities.

The Tennessee Constitution of 1796, (Art. 10, Sec. 2) provided:

> All laws and ordinances now in force and use in this Territory, not inconsistent with this constitution, shall continue to be in force and use in this State, until they shall expire, be altered, or repealed by the legislature.

Subsequent constitutions have contained substantially the same provisions.[9]

We adopted the common law:

> (A)s it stood at (1776) and before the separation of the colonies . . . (it) being derived from North Carolina, out of which state the State of Tennessee was carved. The Acts of North Carolina, 1715, c. 31, and Acts of North Carolina, 1778, c. 5, preserved the common law, while Session Act 1789, c. 3 provided for its continuance in the State of Tennessee. (Parenthetical date supplied).

Quarles v. Sutherland, 215 Tenn. 651, 389 S.W.2d 249 (1965); Smith v. State, 215 Tenn. 314, 385 S.W.2d 748 (1965).

Thus it is that Tennessee, through North Carolina, adopted the common law of England as it existed in 1776. Case law research is next to impossible and text treatment in a relatively minor area of the common law is rendered extremely difficult by virtue of the antiquity of the cases. We can only turn to earlier English works and to the decisions from other jurisdictions.

Volume 12, Encyclopedia of the Laws of England, 53 (1898—London), under the heading, Surname, reads in pertinent part:

> A person usually bears the surname of his father, but if he so pleases he may change it for another name, and it is not necessary that he should take any formal step to effectuate this (Davies v. Lowndes, 1835, J. Bing. N.C. 618) unless, indeed he changes his name in compliance with the injunction of a name and arms clause . . .

> \* \* \* \* \* \*

> Except where the name to be assumed is prescribed by a name and arms clause, a person is at liberty to choose and bear any name he likes.

> \* \* \* \* \* \*

> A woman on her marriage takes her husband's name, and she retains it although the marriage may have been dissolved by divorce unless she has so far obtained another name by *repute* as to obliterate the original name. (Emphasis added). (Fendall v. Goldsmid, 1877, 2 P.D. 263).

The acquisition of a surname by repute figures very prominently in a change of name under English law.

The case of Cowley v. Cowley, (1901) A.C. 450, was heard before the House of Lords. Lady Cowley divorced Lord Cowley and married a commoner. Lord Cowley sued to restrain her from bearing his

---

7. Coke, Litt., Sec. 3(a) as footnoted in 15 Yale L.J. at page 228 (1905).

8. See footnote, 15 Yale L.J. at page 228.

9. See Tennessee Constitution, Art. XI, Sec. 1.

name and arms. During the course of the deliberations, Lord Lindley said:

> Speaking generally, the law of this county allows any person to assume and use any name, provided its use is not calculated to deceive and to inflict pecuniary loss.

In Vol. 19, Halsbury's Laws of England, 3rd ed., at page 829, Sec. 1350, it is said, among other things:

> When a woman on her marriage assumes, as she usually does in England, the surname of her husband in substitution for her father's name, it may be said that she acquires a new name by *repute*. The change of name is *in fact, rather than in law,* a consequence of the marriage. (Emphasis added)

In Volume 20, American Journal of Comparative Law, page 606 (1972) it is said:

> In English law, contrary to the law of most countries, there are no rules about legal names. The surname of any person, male or female, is the name by which he or she is generally known, provided that the name was not assumed for any fraudulent purpose. It follows that, if a man and a woman are cohabiting without marriage it is perfectly possible and not unusual for the woman to assume the same surname as the man. She usually does this by executing a deed poll declaring the name by which she wishes to be known. This is usually referred to as "changing one's name by deed poll". In fact the name is not changed by the deed poll. The name is changed by the *reputation*, of which the deed poll is good evidence.

The better opinion seems to be, and this is accepted by the learned editors of the latest edition of Halsbury's Laws of England, that the assumption by a woman of her husband's surname on marriage is a *matter of custom and not of law.* (emphasis supplied)

We now examine and analyze cases from various American jurisdictions. As will be seen, the opinions in these cases are not in harmony either as to results or as to the particular court's view with respect to the common law.

Virtually all cases holding that a woman changes her name by marriage are bottomed on a faulty construction of Chapman v. Phoenix National Bank of N.Y., 85 N.Y. 437 (1881). This was a case wherein a woman sought to have a confiscation proceeding set aside because it was brought in her maiden name, her insistence being that it was invalid for lack of notice. Chapman was a North Carolina school teacher. She had purchased stock in the Phoenix Bank prior to her marriage, with the certificates being in her maiden name. Dividends were paid to her until January 1, 1861. Thereafter, the War between the States ensued, but Chapman took no part in what the New York Court injudiciously and with palpable historic ignorance called "the rebellion." In February 1864 the Bank was notified that her stock and all accrued dividends were seized. Thereafter the United States Attorney filed a libel alleging that the stock belonged to "a rebel" and had been bought and used for the purpose of aiding, abetting and promoting "insurrection and rebellion."

This case, in current parlance, probably should be denoted as "The Case of the Busy Lady". It was alleged that she had acted as an officer of the rebel army and navy, as a member of the Confederate Congress, as a judge, commissioner and agent of the Confederate States, and as a member of a convention and judge of some one of the Confederate States. All these allegations were false.

Chapman, having no notice of the ensuing attachment and seizure, did not show up in court and default judgment was entered. When she learned of this action a year later, she brought suit.

The court denounced the sufficiency of the notice on numerous grounds. Among

other things, it was held that there was no possibility of her having received the notice and she was "within the Confederate lines" and "could not have crossed the lines to respond thereto." To bolster the court's holding that she was· "in no way brought into court," the effect of the stock being held in the maiden name of a married woman was considered. In this connection the court said:

> For several centuries, by the common law among all English speaking people, a woman, upon her marriage, takes her husband's surname. That becomes her legal name, and she ceases to be known by her maiden name. By that name she must sue and be sued, make and take grants and execute all legal documents. *Her maiden surname is absolutely lost, and she ceases to be known thereby.* (emphasis supplied)

This dictum was a triumph for this lady, but a travesty and a tragedy for her sex.

The appellants rely upon Roberts v. Grayson, 233 Ala. 68, 173 So. 38 (1937), insisting, in brief, that it holds that "a woman's maiden name ceases upon her marriage, and she ceases to be known thereby". With utmost deference to counsel we find nothing in the case to support this assertion. This case involved a claim against a decedent estate in which the deceased Hattie W. Jones, was designated as Mrs. J. C. Jones. The whole thrust of the Court's holding was that the name used was sufficient to give notice stimulating inquiry. As a part of the holding the Court stated:

> (A) married woman's name consists, in law, of her own Christian name and her husband's surname.

*Roberts* very obviously does not raise the question or discuss or decide the issue of whether a married woman automatically, and as a matter of law, assumes the surname of her husband.

Appellants also rely upon the case of Peoples ex rel. Rago v. Lipsky, 327 Ill.App. 63, 63 N.E.2d 642 (1945), which is precisely in point.

Rago, a Chicago lawyer, who used her maiden name professionally, socially and exclusively after her marriage, was denied permission to remain registered under her maiden name. The Illinois statute is substantially the same as that of Tennessee, providing that "Any registered voter who changes his or her name by marriage . . . shall be required to register anew . . ."[10]

The Court held the statute made it mandatory for Rago to re-register under the surname of her husband. Relying upon *Chapman* and other authorities, the Court said:

> (I)t is well settled by common-law principles and immemorial custom that a woman upon marriage abandons her maiden name and takes the husband's surname, with which is used her own given name.

Further, the Court refers to

> (T)he long-established custom, policy and rule of the common law among English-speaking peoples whereby a woman's name is changed by marriage and *her husband's surname becomes as a matter of law her surname.* (Emphasis supplied)

Our attention is called to an opinion rendered on February 13, 1974 by the Attorney General of Illinois, wherein he states:

> I am aware of the decision in People ex rel. Rago v. Lipsky, 327 Ill.App. 63, 63 N.E.2d 642, which holds that it is well settled by common-law principles and immemorial custom that a woman takes the surname of her husband. I do not believe this *appellate* decision should control. The other Illinois decisions and cases elsewhere establish that a woman may in fact retain her own name upon

---

10. Sec. 6–54, Election Code of Illinois.

marriage with or without court proceedings. (emphasis supplied)

Appellee places heavy reliance upon State ex rel. Krupa v. Green, 114 Ohio App. 497, 177 N.E.2d 616 (1961), which fully supports her position. This was an action seeking to prohibit a Board of Elections from placing the maiden name of a married woman on the ballot. The court in pertinent part said:

"It is only by custom, in English speaking countries, that a woman, upon marriage, adopts the surname of her husband in place of the surname of her father.

\*   \*   \*   \*   \*   \*

"The Supreme Court of Ohio in the case of Pierce v. Brushart, 153 Ohio St. 372, at page 380, 92 N.E.2d 4, at page 8, said:

" 'It is universally recognized that a person may adopt any name he may choose so long as such change is not for fraudulent purposes.'

\*   \*   \*   \*   \*   \*

"In England, from which came our customs with respect to names, a woman is permitted to retain her maiden surname upon marriage if she so desires.

"M. Turner-Samuels, in his book on 'The Law of Married Women' at page 345, states:

" 'In England, custom has long since ordained that a married woman takes her husband's name. This practice is not invariable; nor compellable by law. \* \* \* A wife may continue to use her maiden, married, or any other name she wishes to be known by. \* \* \*'

\*   \*   \*   \*   \*   \*

Krupa is the primary American authority cited in support of Stuart v. Board of Supervisors, infra, and is said to be "the only previous American decision to approach the issue of married women's surnames from the general context of the legal history of surnames and to bring a searching common law analysis to bear upon the qeustion".[11]

Appellant cites Wilty v. Jefferson Parish Democratic Executive Com., 245 La. 145, 157 So.2d 718 (1963). The facts are somewhat unique. Vernon J. Wilty, Jr. sought to prevent his estranged wife's name from appearing upon the ballot as a candidate against him, as Mrs. Vernon J. Wilty, Jr. He asserted that her correct legal name was Mrs. Laura Verret Wilty. The court decided the issue in favor of the husband.

While we do not regard this case as being precisely in point, we include it because it has been rather widely cited.

The Majority Opinion (the court produced five opinions) starts out by stating that "there is no definite law or decision in Louisiana as to what is the legal name of a married woman". Justice Sanders, concurring in the results, takes issue, saying:

Although unnecessary for the decision, the majority cites, with apparent approval, the rule that by marriage a woman loses her maiden surname and takes her husband's surname as her legal name. I am unable to agree that marriage has this effect under the law of Louisiana.

\*   \*   \*   \*   \*   \*

After marriage, the legal name of a woman continues to be her maiden name, or patronym. The surname of the husband is used only as a matter of custom to indicate the marital status of the wife. (Emphasis supplied). See Succession of Kneipp, 172 La. 411, 134 So. 376.

Kneipp is also widely cited in commentaries and cases but is not alluded to in the majority opinion. Wilty is simply not authority as to the issue in the case sub judice. It is concerned solely with fairness in elections and as pointed out in the foregoing concurring opinion, the expressions with respect to the correct name of a mar-

11.   32 Maryland L.Rev. 409 (1973).

ried woman were unnecessary and are dicta.

Appellant strongly relies upon Forbush v. Wallace, 341 F.Supp. 217 (M.D.Ala. 1971). This class action, heard by a three-judge panel, challenges a requirement of the Alabama Department of Safety that a married woman use her husband's surname on her driver's license, and asserts that such a requirement violates the equal protection clause of the Fourteenth Amendment.

Citing Roberts v. Grayson, the Court notes that "Alabama has adopted the common law rule that upon marriage the wife by operation of law takes the husband's surname." The Court also observes:

> Certainly the *custom* of the husband's surname denominating the wedding couple is one of long standing. While its origin is obscure, it suffices for our purposes to recognize that it is a *tradition* extending back into the heritage of most western civilizations. It is a *custom* common to all 50 states in this union. Uniformity among the several states in this area is important. (emphasis supplied)

We agree that we are dealing with custom and tradition. This is all *Forbush* actually stands for insofar as Rose Palermo's suit is concerned. The *Forbush* court actually held that the requirement that a married woman obtain a driver's license under her husband's surname found a rational basis in administrative convenience.[12] The Court does not discuss the existence of a rational basis for the common law requirement of Alabama, if there be

such a requirement. There are other questions left unanswered, e.g., whether sex is a "suspect classification."[13]

Appellees place great reliance upon Stuart v. Board of Supervisors of Elections, 266 Md. 440, 295 A.2d 223 (1972). Mary Stuart, a married woman, registered to vote under her maiden name. Upon her refusal to re-register under the surname of her husband, her registration was cancelled. As Rose Palermo, she had used her maiden name exclusively and had never used her husband's surname.

In upholding her right to register under her maiden name, the Maryland Court of Appeals, in a brilliant and scholarly opinion by Chief Judge Murphy said:

> We have heretofore unequivocally recognized the common law right of any person, absent a statute to the contrary, to "adopt any name by which he may become known, and by which he may transact business and execute contracts and sue or be sued." Romans v. State, 178 Md. 588, 597, 16 A.2d 642, 646.

> \*   \*   \*   \*   \*   \*

> Consistent with the common law principle referred to in the Maryland cases, we hold that a married woman's surname does not become that of her husband where, as here, she evidences a clear intent to consistently and nonfraudulently use her birth given name subsequent to her marriage. Thus, while under *Romans* a married woman may choose to adopt the surname of her husband—this being the longstanding custom and tradition which had resulted in the vast ma-

---

12. The administrative convenience test was rejected by the Supreme Court in Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed. 2d 225 (1971).

13. In Sail'er Inn, Inc. v. Kirby, 5 Cal.3d 1, 95 Cal.Rptr. 329, 485 P.2d 529 (1971), the California Supreme Court in finding sex to be a class which should be "suspect", said: Sex . . . is an immutable trait, a status into which the class members are locked by the accident of birth. What

differentiates sex from nonsuspect statuses, such as intelligence or physical disability, and aligns it with the recognized suspect classifications is that the characteristic frequently bears no relation to ability to perform or contribute to society . . . .

\*   \*   \*   \*   \*

Women, like Negroes, aliens, and the poor have historically labored under severe legal and social disabilities.

\*   \*   \*   \*   \*

jority of married women adopting their husbands' surnames as their own—the mere fact of the marriage does not, as a matter of law, operate to establish the custom and tradition of the majority as a rule of law binding upon all.

From a study of the English authorities cited to us by the parties and amici curiae, we believe the rule we enunciate today is *founded upon the English common law* incorporated into the laws of Maryland by Article 5 of the Maryland Declaration of Rights. (Emphasis supplied)

In Custer v. Bonadies, 30 Conn.Sup. 387, 318 A.2d 639 (1964), the Supreme Court of Connecticut followed Stuart and *Krupa, supra.*

Our investigation has led us to the case of Application of Wallace, 319 A.2d 793 (N.J.1974), wherein a married woman petitioned the Court for permission to resume the use of her maiden name. The Court held that she had assumed the husband's surname on marriage and that to permit her to use her maiden name should be denied in the light of the confusion which would be created if children were born of the marriage. This case contains an excellent and exhaustive review of the authorities on each side of the question here presented.

One day following oral argument in Rose Palermo's case, the Supreme Court of Wisconsin released its opinion in Kruzel v. Podell, 226 N.W.2d 458 (Wis.1975). Rose Kruzel, a married woman, petitioned the Court for change of name in order that she might use her maiden name. She had consistently and exclusively used her maiden name. The Court, in a most comprehensive opinion, held that "a woman upon marriage adopts the surname of her husband by thereafter customarily using that name, but no law requires that she do so. If she continues to use her ante-nuptial surname, her name is unchanged by the fact that marriage has occurred."

We are indebted to the Wisconsin Court for calling our attention to a recent New York case, which casts doubt upon the precedent of the *Chapman* dicta. In this regard the Court said:

In the recent case of Application of Halligan [for Leave to Change Her Name to Sara Ryan], (1974) 46 A.D.2d 170, 361 N.Y.S.2d 458, a unanimous court held that Sara Ryan, married one Halligan, had the right to be known as Sara Ryan and by no other name, despite the marriage. No reference was made to the *Chapman* case.

And yet the erroneous statement of the common law in *Chapman* formed the predicate for a substantial number of decisions misinterpreting the common law of England.

On the common law theory of marriage the Court said:

It is undoubtedly true that the tendency of a wife to take her husband's surname was spawned by the common law theory of marriage. Under that theory, upon marriage, a man and a woman became one and that one was the husband. In view of that theory of marriage, it is perhaps surprising that the English common law, out of which grew the theory of coverture, did not require that the husband's surname be assumed in all cases by the wife. On the contrary, however, when the wife did assume the husband's name, it was a matter of custom or practice and not of law.

Based upon an intensive investigation into the law from which we distill the cases herein cited—and upon excellent and elaborate briefs submitted by counsel for the respective parties—we conclude that at the common law, as of the time of the separation of the colonies, a woman acquired a new name by repute and that her name was thus changed *in fact and not in law.* The name change came as a result of custom and usage. It was windblown across the Atlantic Ocean in the same form and has become a universal practice in this country. But it has never had the force of

law in Tennessee either under our common law or statutes.

We frankly concede that there is a division of authority as to this question. We are persuaded that we have adopted the better view; however, we make no claim to judicial infallibility. Irrespective of the common law, we hold that there is no legal requirement in Tennessee that a married woman automatically assume the surname of her husband.

This Court in the past has not hesitated to depart from the rigid common law where "the reason for the common law rule does not exist." Brown v. Shelby, 206 Tenn. 71, 332 S.W.2d 166 (1960).

The common law does not have the force of Holy Writ; it is not a last will and testament, nor is it a cadaver enbalmed in perpetuity, nor is it to be treated like the sin of Judah—"written with a pen of iron and with the point of a diamond." Jeremiah 17:1.

Former Chief Justice Frantz of Colorado, in his dissenting opinion in Tesone v. School Dist. No. Re–2, In County of Boulder, 152 Colo. 596, 384 P.2d 82 (1963), made this erudite observation on the common law:

"The common law of America is evolutionary; it is not static and immutable. It is in constant growth, going through mutations in adapting itself to changing conditions and in improving and refining doctrine. By its very nature, it seeks perfection in the achievement of justice."

This is an eloquent description of the greatness and the glory of the common law.

We are urged to the conclusion that the custom of women adopting the surnames of their husbands has ripened into law and that, therefore, a wife is under a legal duty to adopt her husband's surname. Quite aside from the fact that the law of customs relates essentially to commercial transactions, there is for consideration the fact that the mere custom of married women adopting their husband's surnames, does not necessarily imply a rejection of their own names. We are cited to no case where the non-user of a name works a forfeiture of the right to its use. Moreover, married women have labored under a form of societal compulsion and economic coercion which has not been conducive to the assertion of some rights and privileges of citizenship. The application of a rule of custom and its conversion into a rule of law, would stifle and chill virtually all progress in the rapidly expanding field of human liberties. We live in a new day. We cannot create and continue conditions and then defend their existence by reliance upon the custom thus created. Had we applied the rules of custom during the last quarter of a century, the hopes, aspirations and dreams of millions of Americans would have been frustrated and their fruition would have been impossible.

We are admonished that permitting a married woman to retain her maiden name would result in chaos and confusion. In point of fact, permitting a married woman to retain her own name, would eliminate substantial administrative problems incident to a change of name. With the rapid increase of divorces and re-marriages in America today, with attendant name changes, we may reach the point of having to forbid a change of name by marriage in order to bring about stability, reduce confusion and preserve the identity of women who acquire a different name from each successive husband.

## IV.

In summary, we hold that in this jurisdiction a woman, upon marriage, has a freedom of choice. She may elect to retain her own surname or she may adopt the surname of her husband. The choice is hers.

We hold that a person's legal name is that given at birth, or as *voluntarily* changed by either spouse at the time of marriage, or as changed by affirmative

acts as provided under the Constitution and laws of the State of Tennessee. So long as a person's name remains constant and consistent, and unless and until changed in the prescribed manner, and absent any fraudulent or legally impermissible intent, the State has no legitimate concern.

We hold that appellee's legal name is Rosary T. *Palermo*.

What we have said has no bearing on the continuing right of any individual to the use of a "stage name", or "pen name", or any designation by which he or she desires to be known in any trade, business, occupation or profession.

We do not reach the constitutional issues.

Affirmed at the costs of appellants.

FONES, C. J., and COOPER, BROCK and HARBISON, JJ., concur.