Lane vs. Duchac and others.

LANE, Appellant, vs. DUCHAC and others, Respondents.

*February 21 — March 12, 1889.*

*(1-3) Registry of deeds: Indexes: Omission of description of land: Time of making entries and of recording: Presumptions. (4) Married woman: Use of baptismal name in contracts. (5) Taking securities in name of person not interested. (6-8) Mortgages: Non-negotiable note: Parol transfer: Payment to person not authorized: Release.*

1. Though the general index in the office of register of deeds does not contain the description of the land affected by a mortgage entered therein, yet where such mortgage is transcribed in the proper record book the defect is cured, and the registry is complete from the time the instrument is so transcribed; and, in the absence of evidence to the contrary, it will be presumed that the entry in the general index and the actual recording of the instrument were simultaneous acts.

2. Though the entries in the general index were not made in the consecutive order of the numbers or the dates of receipt of the instruments,— thus showing that an instrument was not entered therein immediately upon its receipt, as required by sec. 759, R. S.,— that fact does not necessarily so impeach the index as to destroy the validity of the registry. If it is made to appear that the entry of such instrument was made at a later date, the same presumption arises that the instrument was transcribed upon the records and the registry completed at that date.

3. The statute (sec. 760, R. S.) does not require the entries in the grantee index to be made in the order in which the instruments were received.

4. Obligations and conveyances executed by and to a married woman in her baptismal name are valid.

5. The fact that securities were taken by one person in the name of another who had no interest in them, does not invalidate the securities or prevent the person beneficially interested from enforcing payment of them by action.

6. After loaning money and taking a note and mortgage as security, a loan agent charged the amount thereof to a client whose money (exceeding such amount) he held with authority to invest it in his discretion. *Held*, in an action by the client to foreclose the mortgage, that the note and mortgage were thereby transferred to the

client, although the papers remained in the hands of the agent and he did not report the transaction to the client until long after.

7. A valid sale and transfer of a non-negotiable note secured by mortgage may be made by parol, and such a sale carries with it the mortgage as an incident of the debt. A defect in the acknowledgment of the formal assignment of the mortgage is therefore immaterial.

8. A mortgagor paid the amount of the mortgage debt to loan agents through whom he had borrowed the money, for the purpose of discharging the mortgage. He knew that the mortgage and the note secured thereby were not in the hands of such agents but had been sent to another person for whom they had acted. The agents had no general authority to collect money for such other person, and the mortgagor had no right to assume that such authority had been given to them. They did not attempt to release the mortgage, but only undertook to procure a release from or through such other person. *Held*, that the payment to such agents did not discharge the debt.

APPEAL from the Circuit Court for *Langlade* County.

The action is to foreclose a mortgage executed by the defendants *Joseph Duchac* and wife to Barbara M. Rhyner, on certain lands in Langlade county, to secure the payment of an unnegotiable promissory note for $300, and interest, given by said *Joseph Duchac* to said Barbara. The note and mortgage were given for a loan of money, and bear date May 29, 1883. The mortgage purports to have been recorded May 31, 1883, in the office of the register of deeds of that county. The loan was made to *Duchac* by one Louis Schintz, of Appleton, a land and loan agent, through the firm of Deleglise & Hutchinson, which firm was engaged in a similar business at Antigo.

Barbara M. Rhyner was the maiden name of the wife of one Ferdoline Zentner, a client of Schintz. The latter had loaned money for Zentner at different times, and for some of those loans had taken securities in the maiden name of Mrs. Zentner, with her consent and by the direction of her husband. Schintz was verbally authorized by both of them

to execute receipts, etc., in her maiden name.   Schintz was also accustomed to make other loans in the name of Barbara M. Rhyner, with her consent.

The money loaned to *Duchac* did not belong to Zentner or his wife, and was not loaned as the money of any particular client of Schintz.   The latter had in his hands when this loan was made more than $300 of the money of the plaintiff, who was also one of his clients, to be loaned for him, and from whom Schintz had a general authority to invest the money in his discretion.   On June 5, 1883, which was almost immediately after he received the note and mortgage from D. & H., Schintz charged the amount of such note to the plaintiff, and at the same time assigned, or attempted to assign, the mortgage to the plaintiff by a written assignment executed by him in the name of said Barbara.   He attested such assignment and attached thereto his certificate, as a notary public, of the acknowledgment thereof by Barbara.   He retained the papers in his hands until after the action was commenced, and until that time plaintiff was not informed of the transaction.   On August 15, 1883, *Duchac* refunded the $300 to D. & H., who agreed to obtain the note and mortgage then in the hands of Schintz, and a release of the mortgage, but failed to do so. *Duchac* then mortgaged the same land to one Barnes, who knew of the mortgage in suit.   Barnes afterwards foreclosed his mortgage, purchased in the land at the foreclosure sale, and conveyed the same by warranty deed to the defendant *McCully*.   The latter had no actual notice, when he purchased the land, of the existence of the mortgage here in suit.

The general index kept in the office of the register of deeds, pursuant to sec. 759, R. S., contains an entry of the mortgage, in compliance with the statute, except a description of the land thereby mortgaged is omitted therefrom, and except also certain apparent irregularities in the order

of the entries therein, which are referred to in the following opinion. The index first mentioned in sec. 760, and the grantee index provided for therein, were kept in such office, and contain entries of the mortgage as required by the statute. The mortgage was recorded in full in the proper record book, at the place specified in the indexes, and the register indorsed upon it the time it was received for record, etc., pursuant to subd. 5, sec. 758. When the mortgage was thus recorded at length does not affirmatively appear.

Defendant *McCully*, and two others who were made defendants as alleged subsequent incumbrancers, answered in the action. The other defendants defaulted. The answers need not be stated here, because no question arises on the pleadings. It is sufficient to say that they present the questions considered and determined in the opinion. The transactions out of which this action arose are somewhat numerous and involved, but it is believed the foregoing statement of facts contains all that is necessary to an intelligent understanding of the material points in the case.

The circuit court held that there was no valid registry of the mortgage, and, because the defendant *McCully* had no actual notice of the mortgage when he purchased and paid for the land, that his rights were paramount to those of the plaintiff under his mortgage. The court thereupon gave judgment dismissing the complaint upon the merits. The plaintiff appeals from the judgment.

For the appellant there was a brief by *Kennedy & Schintz*, attorneys, and *Thos. Lynch*, of counsel, and oral argument by *Mr. Lynch*. To the point that the interest of a mortgagee can be transferred by parol, and that a mere transfer of the debt to secure which the mortgage is given transfers the interest of the mortgagee in the mortgaged premises, unless it be otherwise expressly agreed, they cited *Brinkman v. Jones*, 44 Wis. 498; *Croft v. Bunster*, 9 Wis.

503; Jones on Mortg. sec. 834; *Carpenter v. Longan,* 16 Wall. 271, and cases cited; *Kennicott v. Supervisors,* id. 452; *Cornell v. Hichens,* 11 Wis. 353; *Andrews v. Hart,* 17 id. 297; *Crosby v. Roub,* 16 id. 616; *Maxwell v. Hartmann,* 50 id. 660; *Kelley v. Whitney,* 45 id. 110; *Perkins v. Sterne,* 76 Am. Dec. 72, and notes.

For the respondents there was a brief by *G. G. Sedgwick* and *Nash & Nash,* and oral argument by *L. J. Nash.*

Lyon, J. I. On all objections to the validity of the mortgage in suit and the right of the plaintiff to maintain this action to foreclose it, the court held with the plaintiff, except upon the question of the validity of the registry thereof. In view of the undisputed fact that the defendant *McCully* took a conveyance of the mortgaged land adversely to the mortgage, without actual notice of its existence, the question of the validity of the registry goes to the right of the plaintiff to a judgment of foreclosure as against him, and is therefore a vital one in the case.

1. One defect in the registry of the mortgage which it is claimed invalidates such registry is that the general index required by sec. 759, R. S., to be kept in the office of the register of deeds, and in which the mortgage is entered, does not contain a description of the mortgaged land, as required by the statute. But where (as in this case) the mortgage has been transcribed in the proper record book of the office, this court held in *Oconto Co. v. Jerrard,* 46 Wis. 317, and again at the present term, in *St. Croix L. & L. Co. v. Ritchie, ante,* p. 409, that the defect is cured and the registry is complete from the time the instrument is so transcribed; and further, that, in the absence of proof to the contrary (and there is none in this case), it will be presumed that the entry in the general index and the actual recording of the instrument were simultaneous acts. These decisions rule this case as to the defect under consideration,

and lead to the conclusion that (unless there is some other defect fatal to the validity of the registry) the mortgage in suit was effectually recorded May 31, 1883. The grounds upon which the above decisions are placed are sufficiently stated in the opinions therein.

2. Sec. 759 requires the entry in the general index to be made immediately upon receipt of the instrument for registry, and, because there is a column in the prescribed form of such index headed "Number of Instrument," the requirement may fairly be implied that all instruments so received must be numbered as received in consecutive order. In the present case that portion of the general index wherein the mortgage in suit is entered contains intrinsic evidence that the first of the above requirements was not complied with, for the entries therein were not made in the consecutive order either of their numbers or the dates of the receipt of the instruments. This fact, however, does not necessarily so absolutely impeach the index as to destroy the validity of the registry. If it is made to appear that the entry of the mortgage therein was made at a later date, the same presumption arises that the mortgage was transcribed upon the records and the registry completed at that date. If thus completed before an adverse title was conveyed to the defendant *McCully*, such registry was constructive notice to him of the plaintiff's mortgage. These are fair deductions from the case of *Hay v. Hill*, 24 Wis. 235. There an entry had been written in the proper index, " with a different ink from the entries immediately before and after, and was interlined between the ruling, and was written in after the entry of the minutes below it, and with different ink from the other entries on that page." There was no explanatory proof, and nothing on the face of the index to show when the entry was thus interlined, or that it was there at any particular time. Adverse rights in the land affected by the instrument intervened, and it was held

there could be no presumption that the entry was made before such adverse rights accrued.   A perusal of the opinion in that case, prepared by the present chief justice, will, we think, satisfy any one that, had it been shown the entry was in fact made before such rights accrued, although a considerable time after the instrument was delivered for record, the registry would have been held valid from that time, and constructive notice to such adverse claimant.

The entry of plaintiff's mortgage in the general index (as well as of three other mortgages executed by the defendants *Duchac* and wife to the same mortgagee, and received for record at the same time) is between an entry of a deed received for record June 2, 1883, at 9 A. M., and another deed so received on the same day at 4 P. M.   So far as appears from the portion of the general index preserved in the bill of exceptions, no entry of any other instrument received for record on or after May 31, 1883, precedes the entries of such mortgages.   Next after the entry of these mortgages we find other entries of instruments received for record at the following dates:   April 14th, May 29th, June 7th, and no others received earlier than June 11th. We think from these facts that the entry of plaintiff's mortgage must have been made either on June 2d, or within a very few days thereafter, and hence that the registry thereof was completed long before the defendant *McCully* acquired his adverse title to the mortgaged land. The present case is entirely unlike that of *Lombard v. Culbertson*, 59 Wis. 433, where it was held that an entry in the general index of the receipt of an instrument for record is essential to make the record thereof constructive notice of the instrument to a subsequent purchaser of the land affected thereby.

The index of records and files required by sec. 760 is in compliance with the statute.   That of grantees shows on its face (as does the general index) that the entries therein

were not made in the order in which instruments were received. But the statute does not require that they shall be so entered.

We reach the conclusion, therefore, that, when *McCully* acquired the title to the land covered by the plaintiff's mortgage, such mortgage was effectually recorded in the register's office of Langlade county; and hence that *McCully* is chargeable with constructive notice of its existence. It follows that, if such mortgage is otherwise valid, *McCully's* title is subordinate and subject to it. As to the answering defendants other than *McCully*, it is sufficient to say that they occupy no better position in respect to the plaintiff's mortgage than does *McCully*.

II. The question of the validity of the registry of the mortgage being thus determined in favor of the plaintiff, the defendants who have interposed answers maintain that the judgment is correct on other grounds, and they seek to uphold it on those grounds, under the rule of *Maxwell v. Hartmann*, 50 Wis. 660, and other cases, that the exceptions of the respondent are available on appeal to save the judgment. Such exceptions raise, in this case, and we think are all presented in, three questions. These are: (1) Is the mortgage void because the name of Barbara M. Rhyner (which it is claimed is a fictitious name) is inserted therein as mortgagee? (2) Does the evidence show any effectual assignment of the mortgage to the plaintiff? and (3) Did the payment of the amount of the mortgage debt by the mortgagor *Duchac* to Deleglise & Hutchinson satisfy such debt? These questions will now be considered in their order.

1. An examination of the testimony satisfies us that the $300 loaned by Schintz to the defendant *Duchac*, although Schintz may have received the money from his clients to be loaned, was, in contemplation of law, the money of Schintz, and that as between him and *Duchac* he was the

owner of the note and mortgage given therefor. He was responsible for the money so received by him, and it does not appear that he used the funds of any particular client or any person other than himself in making the loan. Had the securities been executed to him in his own name, we do not doubt he could have maintained an action upon them.

It is not true that a fictitious payee and mortgagee is named in the note and mortgage. Barbara M. Rhyner is not a fictitious person, but a person *in esse*. True, since her marriage she is entitled to the name of her husband, Zentner, but we are aware of no law that will invalidate obligations and conveyances executed by and to her in her baptismal name, if she choose to give or take them in that form. Hence, were she the owner of the note and mortgage in suit, it would be no defense to her action upon them that they were executed to her by her baptismal name. Neither is it a defense in an action upon them by any other owner that Schintz, with her consent, took them in her baptismal name for a loan made by himself. It is not unusual for a person to take securities in the name of another who has no interest in them, but that does not invalidate the securities or prevent the person beneficially interested from enforcing payment of them by action.

2. Schintz, being the owner of the note and mortgage, was competent to transfer the same to the plaintiff. In view of the course of business between them, as disclosed in the testimony, we think when he charged the amount of the mortgage debt to the plaintiff such transfer was made. It is not important that the papers remained in the hands of Schintz, or that he did not report the transaction to the plaintiff until long after. The relations between them were such that Schintz could lawfully make the transfer without consulting the plaintiff. If ratification by the plaintiff is essential to the validity of such transfer, the bringing of this action founded upon the transfer, or the failure to re-

pudiate it, is a sufficient ratification by the plaintiff of the acts of Schintz. Moreover, Schintz had authority from the mortgagee to sign her baptismal name to the assignment of the mortgage to the plaintiff. Of course he was not competent to attest the same instrument, and certify her acknowledgment thereof before himself as a notary. But neither attestation nor acknowledgment, nor even a written assignment, are essential to the validity of the transfer of the note and mortgage to the plaintiff. A valid sale and transfer of the note could be made by parol so as to vest the same and the mortgage debt of which it is the evidence in the purchaser, and such sale would carry with it the mortgage, as the incident of the debt, without any written assignment thereof. The adjudications in this state and elsewhere to this effect are very numerous. Some of the cases are cited in the brief of counsel for plaintiff.

It is immaterial that the note is not negotiable. A sale of it transfers to the purchaser the mortgage given to secure its payment as effectually as though the note were negotiable. It must be held that the plaintiff was the owner of the mortgage when this action was commenced.

3. When the mortgagor *Duchac* paid D. & H. the $300 for the purpose of discharging the mortgage in suit, he knew that the note and mortgage were not in the hands of that firm, but had been sent to Schintz. D. & H. did not attempt to release the mortgage, but only undertook to procure a release from or through Schintz. *Duchac* took the risk of getting the release in that manner. Had the securities been in the hands of D. & H., and had they surrendered them to *Duchac*, or discharged the mortgage, we should have the question of their authority to do so to determine. But D. & H. assumed to do nothing of the kind, and the question of their authority to discharge the debt is not here. We also think the testimony insufficient to prove that the firm had general authority to collect money for

Schintz before the same became due, or that the course of business between them was such, to the knowledge of *Du-chac*, that he had the right to assume that such authority had been given by Schintz.

Our conclusion is that the defendant's exceptions are insufficient to sustain the judgment. The judgment of the circuit court must therefore be reversed, and the cause will be remanded with directions to that court to give judgment to the plaintiff of foreclosure and sale as demanded in the complaint.

*By the Court.*— Ordered accordingly.