In re Petition of Kruzel for change of name: Kruzel, Appellant, v. Podell, Circuit Judge, Respondent.

*No. 367. Argued November 25, 1974.—Decided March 6, 1975.*
(Also reported in 226 N. W. 2d 458.)

ROBERT W. HANSEN, BEILFUSS, and HANLEY, JJ., dissent.

For the appellant there were briefs by *Joan F. Kessler, S. C.* and *Neubecker, Kessler & McKnight,* all of Milwaukee, and oral argument by *Joan F. Kessler.*

For the respondent there was a brief by *Bruce C. O'Neill* and *Cahill & Fox,* all of Milwaukee, and oral argument by *Mr. O'Neill.*

A brief amicus curiae was filed by *Ruth Bader Ginsburg, Melvin L. Wulf* and *Brenda Feigen Fasteau* for the American Civil Liberties Union and by *Marilyn Hall Patel* and *Sylvia Roberts* for the National Organization for Women.

A brief amicus curiae was filed by *Gretchen Twietmeyer Vetzner* for the University of Wisconsin Women Law Students' Association and the Olympia Brown League.

HEFFERNAN, J. This case presents the question of whether upon marriage a woman is required by law to assume the surname of her husband. We conclude that a woman upon marriage adopts the surname of her husband by thereafter customarily using that name, but no law requires that she do so. If she continues to use her antenuptial surname, her name is unchanged by the fact that marriage has occurred.

Kathleen Rose Harney married Joseph Michael Kruzel on July 31, 1971. She is an art teacher in the Milwaukee school system and was issued a teacher's certificate under her birth-given surname. She was employed by the Milwaukee school system under that name and exhibited works of art under the name Harney. She at all times used the name Harney and not Kruzel.

The Milwaukee school board insisted, however, for group insurance purposes, that Kathleen either use her husband's surname or "legally" change her surname to Harney.

Kathleen accordingly petitioned [1] the circuit court for Milwaukee county for an order "changing" her surname

---

[1] Sec. 296.36, Stats. 1971, provides:

"296.36 Changing names, court procedure. Any resident of this state, whether a minor or of full age, may upon petition to the

from Kruzel to Harney. At the hearing it was shown that at no time had the petitioner ever used the name Kruzel. The only time she had used Kruzel as her

circuit court or county court of the county where he resides and upon filing a copy of the notice, with proof of the publication thereof, as required by s. 296.37, if no sufficient cause is shown to the contrary, have his name changed or established by order of the court. If the person whose name is to be changed is a minor under the age of 14 years, such petition may be made by: (a) Both parents, if living, or the survivor of them; (b) the guardian or person having legal custody of such minor if both parents are dead or if the parental rights have been terminated by judicial proceedings; (c) the mother, if the minor is illegitimate. Such order shall be entered at length upon the records of the court and a copy thereof, duly certified, shall be filed in the office of the register of deeds of such county, who shall make an entry thereof in a book to be kept by such register. The fee for filing and entering each such certified copy is $1. If the person whose name is changed or established was born or married in this state, a copy of the record, duly certified, shall be sent by the clerk of court to the state registrar of vital statistics accompanied by the fee prescribed in s. 69.24, which fee the clerk of court shall charge to and collect from the petitioner. The state registrar shall then correct the birth record, marriage record or both, and direct the register of deeds and local registrar to make similar corrections on their records. No person engaged in the practice of any profession for which a license is required by the state shall change his Christian or given name or his surname to any other Christian or given name or any other surname than that under which he was originally licensed in such profession in this or any other state, in any instance in which the state board or commission for the particular profession, after a hearing, finds that practicing under such changed name operates to unfairly compete with another practitioner or misleads the public as to identity or otherwise results in detriment to the profession or the public. This prohibition against a change of name by a person engaged in the practice of any profession does not apply to any person legally qualified to teach in the public schools in this state, nor to a change of name resulting from marriage or divorce, nor to members of any profession for which there exists no state board or commission authorized to issue licenses or pass upon the qualifications of applicants or hear complaints respecting conduct of members of such profession. Any change of name other than as authorized by law is void."

surname was in the petition for the instant proceeding, and then only for the purpose of "changing" that name to Harney.

The trial judge relied on 57 Am. Jur. 2d, *Name*, p. 281, sec. 9, which states:

"It is well settled by common-law principles and immemorial custom that a woman upon marriage abandons her maiden name and assumes the husband's surname."

The trial judge also reasoned that sec. 247.20, Stats., which permits a woman, upon divorce, under some circumstances, to "resume" her maiden name, indicates that "a woman upon marriage assumes the surname of the husband . . . ."

No one testified in opposition to the name change. However, the trial judge stated that to permit Kathleen to bear the surname Harney and her husband the name Kruzel would be contrary to the best interests of any children that might thereafter be born to the marriage. He said that it should be agreed at the time of marriage that all members of the family should bear the same name. "If they cannot at that time agree, it would be better for them, any children they may have, and society in general that they do not enter into the marriage relationship." He concluded that, upon marriage, her surname was changed to that of her husband, and the petition for change of name back to Harney was denied. The appeal is from the order dismissing the petition for change of name.

Although the petition brought by Kathleen was based upon her assumption that the marriage had compelled a change of name in law, the record shows, and counsel on appeal concedes, that the petitioner never used the surname of her husband but only her paternal surname. Accordingly, this case does not present the legal problems that might arise were a married woman, who had as-

sumed and used her husband's surname, to seek to change that married name and resume her maiden name.

If it can be said that a marriage does not compel a woman to assume her husband's surname, in this case no name change took place at all, and Kathleen's last name remained Harney.

While counsel for the petitioner and for the trial judge have ably briefed the court on numerous other related aspects of the law of name change, the linchpin of either argument is whether a name change occurs automatically upon marriage. The respondent has argued that the trial judge correctly concluded that the common law compelled a marital name change. The petitioner's counsel argued that the common law does not require or cause a change in a woman's surname upon marriage, but rather that such change of name will occur only with the acquiescence of the woman and the use by her of her husband's surname, *i.e.*, the change of name is one of custom and not of law.

The trial court's legal conclusion was based solely on a quotation from American Jurisprudence, a most useful research tool but not a primary law source. It has no weight in itself as controlling authority, and is relevant only to the extent that it is supported by case authority of appellate courts or statutes that speak directly to the issue at hand.

There is, as counsel for respondent concedes, no Wisconsin statute that requires a married woman to take her husband's surname. The respondent argues that, because it is customary for a wife to take her husband's name on marriage, that custom has ripened into a rule of common law. While it is true that some customs of society have developed into rules of law, there is no evidence that in this jurisdiction the custom was ever accorded that effect. Our case law also is silent on this point.

Counsel relies heavily on the bizarre case of *Chapman v. Phoenix National Bank of City of New York* (1881), 85 N. Y. 437. That case states: "For several centuries, by the common law among all English speaking people, a woman, upon her marriage, takes her husband's surname." (P. 449) That statement is merely the ipse dixit of the author of the opinion. No authority is cited for that proposition. It seems clear that, while justice was no doubt done in *Chapman*, it was plainly in error in respect to "centuries" of common law.

Sixty years before *Chapman*, an English case, *The King v. The Inhabitants of St. Faith's, Newton* (1823), 3 Dowling & Ryland's Reports 348, held that a woman is not required to bear the surname of her husband. In an opinion supporting the court's mandate in *St. Faith's*, Judge BEST stated:

"It has been asserted in the argument, that a married woman cannot legally bear any other name than that which she has acquired in wedlock; but the fact is not so; a married woman may legally bear a different name from her husband, and very many living instances might be quoted in proof of the fact." (P. 352)

19 Halsbury, *Laws of England* (3d ed.), p. 829, sec. 1350, is consistent with the holding in *St. Faith's*. Halsbury summarizes the law of England in this respect:

"When a woman on her marriage assumes, as she usually does in England . . . the surname of her husband in substitution for her father's name, it may be said that she acquires a new name by repute . . . . The change of name is in fact, rather than in law, a consequence of the marriage."

It seems clear that *Chapman* [2] erroneously states the common law; and as the quotation from Halsbury seems

[2] The legal legerdemain employed in *Chapman* to reach a just result is commendable, but it was a hard case making bad law. Verina Chapman, a married school teacher living in South Carolina, held a few shares of stock in a New York bank, which

to demonstrate, the custom of taking the husband's name was not accorded the status of a rule of common law. It was merely an example of taking and using a name until it became the name of the user by repute. By repute it could, of course, become a lawful name, though not a name legally compelled by marriage.

It should be noted, moreover, that *Chapman* apparently is not accorded the effect of precedent in New York. In the recent case of *Application of Sara Ryan Halligan* (1974), 46 App. Div. 2d 170, 361 N. Y. Supp. 2d 458, a unanimous court held that Sara Ryan, married to one Halligan, had the right to be known as Sara Ryan and by no other name, despite the marriage. No reference was made to the *Chapman Case*.

It appears that the erroneous conclusion that by common law a married woman must assume her husband's surname had its genesis in the dicta of *Chapman*. It is interesting to note that the American Jurisprudence statement, *supra*, is based upon cases which either cite no authority or cite *Chapman*. In fact, one of the cases relied

she had purchased under her maiden surname, Moore. In an excess of patriotic zeal during the Civil War, she was charged falsely with being a rebel, a confederate officer, a judge, and a member of Congress of the Confederacy. Under the Confiscation Act of 1862, an action was brought to confiscate her bank shares. The action was brought in her maiden name of Verina Moore, and notice was posted under that name. There was no answer to the libel, and confiscation was effected by default.

The New York court held that the default could be set aside because of insufficient notice, *i. e.,* no person such as Verina Moore existed after marriage, only Verina Chapman. It therefore held there was no jurisdiction over the defendant. The case stands as an example of legal fabrication designed to effect a good result. Justice was done in the particular case, but it ought have no precedential value. It should be noted, moreover, that its holding, that a married woman can only sue or be sued in her married name, is directly contrary to *Lane v. Duchac* (1889), 73 Wis. 646, 41 N. W. 962.

upon by American Jurisprudence, *People ex rel. Rago v. Lipsky* (1945), 327 Ill. App. 63, 63 N. E. 2d 642, not only relies on *Chapman* as its authority, but circumlocutionally on American Jurisprudence. We conclude that the entire line of cases which were relied upon by the respondent herein is based upon unsupported assertions in respect to the common-law requirements.

Moreover, in Wisconsin, the attorney general, as the chief legal adviser to the state government and its administrative agencies, has repeatedly held that a woman, upon marriage, is not required by law to take her husband's surname.

A typical statement in respect to the legal name of a married woman appears in XIII Opinions of the Attorney General (1924), 632, 633, wherein it is stated:

"While a married woman generally takes and uses her husband's surname, there is nothing in the laws of this state that affirmatively requires it, although the general rule of such custom is recognized in the divorce laws. See sec. 2360n. Marriage is purely a civil contract under our laws (sec. 2328, Stats.), which does not change the identity of the parties to it."

The attorney general made similar rulings in Report and Opinions of the Attorney General (1906), 270, and XII Opinions of the Attorney General (1923), 256. Additionally, the attorney general has ruled that the common-law right of a person to freely change a name applies in Wisconsin in the absence of fraud. XXXII Opinions of the Attorney General (1943), 203; XXXV Opinions of the Attorney General (1946), 178; XXXIV Opinions of the Attorney General (1945), 72; XXI Opinions of the Attorney General (1932), 528; and XX Opinions of the Attorney General (1931), 627.

While the opinions of the attorney general are not authoritative sources of the law, they are in some cases highly persuasive; and, of course, in cases where an attorney general's opinion has been followed by consistent

administrative practices, those opinions may well become authoritative as a practical construction of a statute.

These opinions are cited, not because they are independent controlling authorities, but because they demonstrate that the custom practiced by most married women of assuming their husbands' surnames has never been interpreted in Wisconsin as a rule of the common law.

The petitioner in this case contends that *Lane v. Duchac, supra,* is an authoritative holding of this court that the common law of Wisconsin has recognized that a wife was not required to assume her husband's name. In that case, it was argued that a mortgage was void because the maiden name, Barbara M. Rhyner appeared in the mortgage instead of the person's married name, Barbara Zentner. The court stated:

"It is not true that a fictitious payee and mortgagee is named in the note and mortgage. Barbara M. Rhyner is not a fictitious person, but a person *in esse.* True, since her marriage she is entitled to the name of her husband, Zentner, but we are aware of no law that will invalidate obligations and conveyances executed by and to her in her baptismal name, if she choose to give or take them in that form. Hence, were she the owner of the note and mortgage in suit, it would be no defense to her action upon them that they were executed to her by her baptismal name." (P. 654)

We do not believe that this case holds, as a matter of common law, that a woman's name remains unchanged despite marriage. That was not the question presented to the court. The question was whether the identity of the person with different names was the same. The court did not hold directly on the question presented here. It would appear, however, had the court concluded that upon marriage it was obligatory for a woman to adopt her husband's surname, that there would have been some

discussion of that point. *Lane* implicitly seems to recognize that the common law did not compel a change in name after marriage. To that limited extent, it is persuasive of the petitioner's point of view.

We conclude, from these limited Wisconsin authorities, that the common law in Wisconsin has never ossified to the point of a holding that a wife is required to take her husband's name. The implicit assumption is to the contrary. The common law of England cited above has remained in effect in the state of Wisconsin until the present day.

The respondent, in effect, is asking us to change that common law to hold for the first time in Wisconsin that a wife is obliged to take the surname of her husband. We conclude, as did the Connecticut court in *Custer v. Bonadies* (1974), 30 Conn. Supp. 385, 318 Atl. 2d 639, that it would be ·inappropriate to make such change. The Connecticut court said:

"It hardly seems the time for the Connecticut courts to accept an outdated rule of common law requiring married women to adopt their spouse's surnames contrary to our English common-law heritage and to engraft that rule as an exception to the recognized right of a person to assume any name that he or she wishes to use." (P. 641)

It is undoubtedly true that the tendency of a wife to take her husband's surname was spawned by the common-law theory of marriage. Under that theory, upon marriage, a man and a woman became one and that one was the husband. In view of that theory of marriage, it is perhaps surprising that the English common law, out of which grew the theory of coverture, did not require that the husband's surname be assumed in all cases by the wife. On the contrary, however, when the wife did assume the husband's name, it was a matter of custom or practice and not of law.

The theory of coverture and the discussion of its effect upon married women's surnames is extensively discussed in a number of law review articles.[3]

During the period prior to the passage of women's rights statutes in the United States, the custom of a wife adopting her husband's surname grew, although not all women yielded to the custom. The custom of a married woman retaining her surname was clearly the practice in England prior to the time of the general adoption of the coverture theory, but with the growth of that common-law theory and the denial of the right of married women to own property, there came the general practice of a wife assuming the husband's surname. 32 Md. L. Rev., *supra,* page 415, states:

"Seen in this light the abandonment of personal, individual surnames by married women becomes comprehensible, indeed almost inevitable, as a symbol of their identity with their husbands, and as a symbol of their lack of individual importance in society."

Obviously, the conditions that led to the practice of having women adopt their husbands' surnames no longer have their foundation in existing law. In Wisconsin law, since the passage of the Married Woman's Property Act, ch. 44 of the Laws of 1850, and of ch. 529, Laws of 1921, granting women equal rights, and the constitutional amendment permitting women to vote, married women have been emancipated from the common-law rules which held them, in effect, in bondage to their husbands and

---

[3] S. Bysiewicz and G. MacDonnell, *Married Women's Surnames,* 5 Conn. L. Rev. (1973), 598, 601; M. Hughes, *And Then There Were Two,* 23 Hastings L. J. (1971), 233, 235; J. Lamber, *A Married Woman's Surname: Is Custom Law?,* 1973 Wash. U. L. Q. 779, 781, 782; M. Spencer, *A Woman's Right to Her Name,* 21 UCLA L. Rev. (1973), 665, 666; and Comment, *The Right of a Married Woman to Use Her Birth-given Surname for Voter Registration,* 32 Md. L. Rev. (1973), 409, 413–415.

deprived them of all property rights. Insofar as this state is concerned, the obligations of the married woman differ little from the obligations of a married man. Each of them, of course, is limited in the same way under the laws of marriage and divorce promulgated by the legislature. Certainly, this court, bearing in mind the history of our society, should not at this time impose a common-law rule that compels a married woman to take her husband's surname when never before has this been required by law in this jurisdiction.

The trial judge and his counsel argue, however, that certain laws enacted by the legislature recognize that it was the understanding of the legislature that a married woman in all cases was compelled by law to take the surname of her husband. Typical among these statutes are the laws relating to the names of persons licensed to practice a profession or special skill. Among these statutes is sec. 256.30 (4), Stats., which governs the name to be used by practicing lawyers. It prohibits the practice of law under any other name than that used upon admission to the bar. The subsection ends, "This subsection does not apply to a change in name resulting from marriage or divorce." The identical words are used in respect to the names of dentists (sec. 447.05 (7)), architects (sec. 443.01 (8)), dental hygienists (sec. 447.08 (7)), chiropractors (sec. 446.02 (6)), and medical doctors (sec. 448.02 (4)).

It is argued from this that it was the legislature's assumption, and therefore the law, that in all cases a name was changed upon marriage or divorce. The statutes in question, however, do not so provide, and in accordance with the common law of this state, as frequently explained by the attorney general, a change of name results from marriage only if, in accordance with common-law principles, the surname of a married woman's husband is habitually used by her. In that event, when a change has taken effect by usage, a

licensed person is permitted to use that changed name in the practice of a profession. This is no more than the recognition of a common-law rule that a person could change his name if it was not done for the purpose of fraud. The licensing laws recognize that a licensed person may change either his given name or his surname to one other than that under which he was originally licensed unless the changed name operates to compete unfairly with another practitioner or misleads the public to its detriment or to the detriment of a profession.

We believe that sec. 247.20, Stats., has a similar significance. That statute, a portion of our divorce laws, provides:

"247.20 **Former name of wife.** The court, upon granting a divorce in which alimony jurisdiction is terminated, may allow the wife to resume her maiden name or the name of a former deceased husband, or the name of a husband of a former marriage of which there are children in her custody, unless there are children of the current marriage as to whom the parental rights of the wife have not been terminated."

That statute is applicable only if a married woman has, by usage, in fact adopted her husband's name. If she has, then her maiden name can be "resumed" upon divorce in accordance with the provisions of the statute. The statute merely recognizes that by marriage a wife may have, through usage, effected a common-law change in her name. It does not indicate that she was compelled to do so.

The same statute and its limited significance was specifically recognized in XIII Opinions of Attorney General (1924), 632, 633, which pointed out that the statute recognized a situation where a name change had taken place, but that opinion also specifically held that the change of name was not required by marriage.

There are other laws of a similar nature scattered throughout the statutes. Each of those statutes has the

same limited purpose, *i.e.*, to recognize a change of name where one has in fact been accomplished. None of them purports to be based upon any theory that marriage ipso facto mandates a married woman to change her name.

We conclude that the statutes of Wisconsin are consistent with the common law, which does not require a wife to assume her husband's surname and when the husband's surname was acquired, it was the result of usage and her holding out to the world that the surname is the same as the husband's.[4]

Since we conclude in this case that Kathleen Rose Harney was never compelled to change her name, nor did she ever in fact adopt the surname Kruzel by usage, her petition, although ostensibly brought under sec. 296.36, Stats. 1971, amounted only to a request for judicial recognition that she had been correct in using her maiden surname in the past. The recognition of her right should have been given by the mandate of the court. Accordingly, the order is vacated and the cause remanded to the trial court for the entry of an order

[4] Recent commentaries and decisions which follow the same line of reasoning adopted by this court are:

*Custer v. Bonadies* (1974), 30 Conn. Supp. 385, 318 Atl. 2d 639, 641; *State ex rel. Krupa v. Green* (1961), 114 Ohio App. 497, 177 N. E. 2d 616, 619; *Stuart v. Board of Elections* (1972), 266 Md. 440, 295 Atl. 2d 223, 226; *Rice v. State* (1897), 37 Tex. Crim. 36, 38 S. W. 801, 802; S. Bysiewicz and G. MacDonnell, *Married Women's Surnames*, 5 Conn. L. Rev. (1973), 598, 602; K. Carlsson, *Surnames of Married Women and Legitimate Children*, 17 N. Y. L. Forum (1971), 552, 555; J. Lamber, *A Married Woman's Surname: Is Custom Law?*, 1973 Wash. U. L. Q. 779, 783; P. MacDougall, *Married Women's Common Law Right to Their Own Surnames*, 1 Women's Rights L. Rep. 2 (No. 3, Fall/Winter 1972/73); Comment, *The Right of a Married Woman to Use Her Birth-given Surname for Voter Registration*, 32 Md. L. Rev. (1973), 409, 413–415; and *Female Surnames and California Law*, 6 UCD L. Rev. (1973), 405, 406.

declaring her right to use the name of Kathleen Rose Harney.

Inasmuch as we conclude that a change in name was not involved in the instant case, we need not explore in depth the discretion that sec. 296.36, Stats. 1971, confers upon a trial judge in denying a change of name. It should be noted, however, that the discretion granted therein is extremely narrow. It provides that upon petition to the court any resident may have a name changed "if no sufficient cause is shown to the contrary."

We conclude, as did the attorney general in XXI Opinions of the Attorney General (1932), 528, 530, that the statutes merely affirm, and do not abrogate, the common law. As our licensing statutes demonstrate, the common law should be permitted to operate unless evidence is put forward to show that some fraud or deception is intended by a change of name or unless, under sec. 296.36, Stats. 1971, for "cause shown."

The New York Intermediate Appellate Court, in *Application of Sara Ryan Halligan, supra,* dealt with a similar problem. In that case, Judge SIMONS, speaking for the court, stated that the trial court:

". . . noting the confusion that would result if a husband and wife were known by different names, held that since petitioner had 'failed to set forth any compelling reason for seeking a court-approved name change', the application must be denied. . . . We think denial of the application was an improvident exercise of the court's discretion."

The New York statute provides that a name change shall be granted if the court shall determine that the petition is true and there is "no reasonable objection" to the change.

Under sec. 296.36, Stats. 1971, where the name change can be denied only if "sufficient cause is shown to the contrary," it would appear that the ambit of discretion is

even narrower than that accorded by the New York Civil Rights Law.

The points raised by the trial judge in the instant case in objection to the change of name could well be valid under proper circumstances, but only if proof were adduced to support the conclusions. The reasons given for the denial of the change of name are completely conclusory and without any evidence of their applicability to the situation before the court. While the discretion which may be exercised by a trial judge in refusing a change of name is limited, to the extent that it is properly used it must be based on the underpinnings of the facts of the case and upon reasonable proof. Unsupported generalizations do not constitute a cause shown to deny a change of name. Under the common-law standard, a showing of fraud or misrepresentation akin to fraud is necessary to deny a change of name.

Because the facts of this situation do not require it, and since the law of Wisconsin does not require that a husband and wife have a common surname, the constitutional question posed by the briefs amici curiae is not reached.

*By the Court.*—Order vacated, and cause remanded for further proceedings consistent with this opinion.

CONNOR T. HANSEN, J., concurs in the result.

ROBERT W. HANSEN, J. *(dissenting)*. The petitioner-schoolteacher here came to court with a petition for change of name to assert her right to teach in the Milwaukee public schools under her maiden name, which was also her professional name as an artist. The sole reason she gave for such change of name being sought was the rule of the Milwaukee school board requiring that a married woman schoolteacher be listed by her married name on all school records. Since she did not comply with that rule, the petitioner had been denied inclusion in a family protection insurance program avail-

able to married women teachers in the Milwaukee school system.

This very rule from the same school board came before this court for review over fifty years ago.[1] Then the Milwaukee school board had dismissed, for violation of the rule, a teacher who had insisted upon her right to teach under her maiden name. This court set aside such dismissal, and ordered the teacher reinstated, maiden name and all. As to the application of the rule to the teacher dismissed, this court found the record ". . . barren of anything indicating any harm or damage actually done in the administration of the school affairs, to school discipline, or control . . . ."[2] As to the petitioner here, the rule as clearly did not warrant the exclusion of the petitioner from the insurance program for married school teachers, solely because she was listed under her maiden name. On its face, the rule has no relatedness to the proper administration of school affairs or classroom teaching, and is a rule beyond the authority of the school board to enact. Direct challenge to the rule would be by writ. At oral argument it was indicated that the rule has since been repealed on advice of the city attorney. Whether or not this has occurred, the rule being invalid, the right the petitioner sought to assert by change-of-name petition—to teach under her maiden name—was hers, without a change of name being required.

The rule aside, the right of a married woman schoolteacher to use her maiden name was assured in a far earlier holding of this court. Before the turn of the century, a married woman used her maiden name in signing a note and real estate mortgage. The holder of the real estate, who had acquired it without actual knowledge of the mortgagor, brought the consequences of

---

[1] *State ex rel. Thompson v. School Directors* (1923), 179 Wis. 284, 191 N. W. 746.

[2] *Id.* at page 289.

such maiden name signature to this court for decision.[3] He claimed that the mortgage was void ". . . because the name of Barbara M. Rhyner (which it is claimed is a fictitious name) is inserted therein as mortgagee. . . ." [4] This court there held that it was no defense to the foreclosure action that the married woman had executed the note and mortgage, using her maiden name or baptismal name. This court then and there held:

"It is not true that a fictitious payee and mortgagee is named in the note and mortgage. *Barbara M. Rhyner is not a fictitious person, but a person in esse.* True, *since her marriage she is entitled to the name of her husband, Zentner,* but we are aware of no law that will invalidate obligations and conveyances executed by and to her in her baptismal name, *if she choose to give or take them in that form. . . .*" (Emphasis supplied.) [5]

The italicized portions of the *Lane* decision, in this writer's opinion, make clear that three conclusions as to the rights of married women in this state cannot be escaped or avoided:

(1) That a married woman in this state, as "a person in esse," does not lose her right to use her maiden name.

(2) That a married woman in this state "is entitled to the name of her husband," the legal name of the family unit.

(3) That a married woman in this state has the option to use either her married name or her maiden name, "if she choose to give or take them in that form."

The writer would follow and apply here the *Lane* holdings, quoted above, finding them to be wine that has mellowed, not soured, over the passing years. While some may disagree with the public policy and rights then established, with the decision standing without judicial or legislative modification since 1889, the writer

---

[3] *Lane v. Duchac* (1889), 73 Wis. 646, 41 N. W. 962.

[4] *Id.* at page 653.

[5] *Id.* at page 654.

would not abandon it now. The majority does, finding that ". . . the conditions that led to the practice of having women adopt their husbands' surnames no longer have their foundation in existing law. . . ." For the options granted to married women in *Lane*, the majority substitutes a new rule, and that rule is stated in the majority opinion to be:

". . . a *change of name* results from marriage *only if*, in accordance with common law principles, the surname of a married woman's husband is *habitually used by her*. . . ." (Emphasis supplied.)

The new "habitual user" test replaces the options granted to married women under *Lane*. For now the majority opinion makes clear that a married woman in this state acquires her husband's surname only if, as and when it is ". . . the result of usage and her holding out to the world that the surname is the same as the husband's." If she doesn't use it, she doesn't get it. If she blurs the situation by using both her maiden name and her married name, she will be hard put to qualify as an "habitual user" under the new test.

What does this new "habitual user" test do to the options granted to married women in this state by the *Lane* decision?

(1) *It ends the right of a married woman in this state to use either her married name, or her maiden name, or both.* For the "either-or" of *Lane*, it substitutes "one-or-the-other." Since the petitioner here for a change of name never did ". . . in fact adopt the surname Kruzel [her husband's name] by usage, . . ." her petition, the majority holds, was not really for change of name but ". . . a request for judicial recognition that she had been correct in using her maiden surname in the past." The majority presumably excepts and excuses her signature on the change-of-name petition, stating her name, the one she wanted changed, to be Kathleen Rose Kruzel. She could have one name or the other, but not both. But

in the *Lane Case* the lady involved signed her maiden name, Barbara M. Rhyner, to the mortgage document, but, at other times, on other occasions, used her married name, Mrs. Barbara Zentner. This court held that Barbara could use either name. In fact, she had used both names. The majority holds that if this petitioner is Kathleen Rose Harney in the art class at school, she cannot be Kathleen Rose Kruzel at home with her husband. Thus the right given to married women under *Lane* is narrowed by the majority's new rule now.

(2) *It finds unnecessary the existence of a legal name for the family unit, available to husband and wife, and prescribed for their children.* Under the *Lane* holding the married woman's use of her maiden name did not bar or affect her right to also use her married name, the court there holding that she could use her maiden name and that, nonetheless, "since her marriage she is entitled to the name of her husband, Zentner." However, now, under the majority's rule, if the wife is an "habitual user" of her maiden name, she does not acquire her husband's name. She is not entitled to use the name of her husband and their children. Folks may differ on what that family name ought be. By law and custom it certainly has been the surname of the husband.[6] But the

---

[6] 2 Bishop, *Marriage, Divorce & Separation*, ch. 51, vol. 14, p. 617, sec. 1622, stating: "Name—The rule of law and custom is familiar, that marriage confers on the woman the husband's surname. . . . In some of our States, the statutes authorize the divorcing court to permit the woman to resume her maiden name." *See also:* M. Spencer, *A Woman's Right to Her Name*, 21 UCLA L. Rev. (1973), 665, the author stating: "According to the rule in the majority of common law jurisdictions, a woman automatically loses her maiden name upon marriage and, in its place, takes her husband's surname as her legal name. . . ." *See also:* B. Brown, T. Emerson, G. Falk and A. Freedman, *The Equal Rights Amendment: A Constitutional Basis for Equal Rights for Women*, 80 Yale L. J. (1971), 871; M. Hughes, *And Then There Were Two*, 23 Hastings L. J. (1971), 233. *See also:* 57 Am. Jur. 2d, *Name*, p. 281, sec. 9.

legislature could as well make it the maiden name of the wife, or some combination of the names of the husband and the wife. That there be such single name available to spouses, and identifying their children, is inherent in the concept of marriage as a partnership.[7] The roles of the partners may vary, but the identity of the partnership as a viable and functioning unit or entity is not served by its having no name. That idea should appeal only to those who see our society as a numerical aggregate of atomized particles rather than as a plurality of groupings, the family the most basic and significant among them.[8]

In 1889, the year of the *Lane* decision, the Wisconsin legislature recognized the existence of a family name, created by the fact of marriage, in empowering courts in divorce judgments ". . . to change the name *which the wife acquired by marriage* to that by which she was known and called prior to entering into the contract of marriage." (Emphasis supplied.) [9] That statute, renumbered, now provides that the court in such divorce judgment ". . . may allow the wife to *resume her maiden name* or the name of a former deceased husband, or the name of a husband of a former marriage of which there are children in her custody, *unless there are children of the current marriage as to whom the parental rights of the wife have not been terminated.*" (Emphasis supplied.) [10] The legislature thus recognizes the ex-

---

[7] *See: Lacey v. Lacey* (1970), 45 Wis. 2d 378, 382, 173 N. W. 2d 142.

[8] *See:* Sec. 245.001 (2), Stats., providing: ". . . It is the intent of chs. 245 to 248 to promote the stability and best interests of marriage and the family. Marriage is the institution that is the foundation of the family and of society. Its stability is basic to morality and civilization, and of vital interest to society and the state. The consequences of the marriage contract are more significant to society than those of other contracts, and the public interest must be taken into account always. . . ."

[9] Sec. 2376*a*, Stats. 1889, predecessor of sec. 247.20, Stats.

[10] Sec. 247.20, Stats.

istence of a single family name, acquired by marriage. In fact the legislature continues the existence of such family name of a husband, wife and their children beyond the life of the marriage, where minor children are involved and affected. Other statutes clearly recognize the existence of a single legal name for the family unit as such. For example, registered electors are, by statute, required to transfer their registration "Whenever an elector's name is legally changed, *including by marriage or divorce* . . . ." (Emphasis supplied.) [11] If this legislative support for a common family name for husband, wife and children is to be ended, it is the legislature that should do the ending. [12]

(3) *It eliminates the married women's prerogative to change her mind.* Under the *Lane* option a married woman in this state could, at her option, use either her maiden name or her married name. The right to use what the court then called her baptismal name was hers to exercise whenever "she choose to give or take in that form." Under the majority's "habitual user" test, it is only through usage that a married woman secures the right to use the family name, that of her husband. If there is "habitual use" of her married name, and only

[11] As to such requirement of voter registration based on the family or married name, *see:* sec. 6.40 (1) (c), Stats. *See also:* Sec. 296.36, Stats. 1971, the change-of-name statute here involved, providing: ". . . This prohibition against a change of name by a person engaged in the practice of any profession does not apply . . . to a change of name resulting from marriage . . . ." *See also:* statutes requiring professionals under the surname under which they were originally licensed or registered but providing that such requirement does not apply "to a change of name resulting from marriage or divorce." Secs. 256.30 (4)—attorneys; 443.01 (8)—architects; 447.05 (7)—dentists; 447.08 (7)—dental hygienists; 446.02 (6)—chiropractors; 448.02 (4)—medical doctors.

[12] *Note:* The legislature has rejected a proposal to amend sec. 247.20, Stats., that would have permitted a married woman to keep her maiden name as her legal surname. (Assembly Amendment No. 10 to 1973 Assembly Bill 23, striking sec. 144 of the bill, adopted on October 4, 1973. Journal of the Assembly, page 2561.)

if there is, has she ". . . effected a common law change in her name." No such "habitual use," and her name remains her maiden name. There is an element of choice remaining but only as to whether the family name is to be acquired or the maiden name retained. Circumstances may change, but the choice, once made, appears final. If the bride, after the wedding, elects to retain her maiden name by not getting into the habit of using her husband's surname, she has made her decision. If, after the babies arrive, she would like to go to the PTA meeting as Mrs. So-and-So, that right has long ago been abandoned by her under the new test. For the free and continuing "either-or" alternatives of *Lane,* there has been substituted a "one-or-the-other" election, apparently irrevocable once exercised. Who gains by that?

The petitioner-schoolteacher here came to court seeking a change of name in order that she might teach her classes under her maiden name. The writer would affirm the trial court here and hold that the right she sought to secure was hers before she came to court. The majority vacates and remands, with directions to the trial court to enter an order that the petitioner never acquired her married name because she never was an "habitual user" of it. When she leaves the courtroom with that order she will have won only what was her right to do before she came to court. In the winning she will have lost for herself and others entitlement to the family name, the right to use either her maiden name or her married name or both, and the right to ever change her mind. The thought occurs that she might have been better off if she had never gone to that courthouse at all.

The writer is authorized to state that Mr. Justice BRUCE F. BEILFUSS and Mr. Justice LEO B. HANLEY join in this dissent.